# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,
Plaintiff and Appellant,

v.

MARIA ELENA LOPEZ,
Defendant and Respondent.

S238627

Third Appellate District
C078537

Yolo County Superior Court
CRF143400

November 25, 2019

Justice Kruger authored the opinion of the Court, in which Justices Liu, Cuéllar, and Groban concurred.

Justice Chin filed a dissenting opinion, in which Chief Justice Cantil-Sakauye and Justice Corrigan concurred.

PEOPLE v. LOPEZ

S238627


Opinion of the Court by Kruger, J.


Acting on an anonymous tip about a motorist's erratic driving, a police officer approached defendant Maria Elena Lopez after she parked and exited her car. When the officer asked if she had a driver's license, she said she did not. Police then detained her for unlicensed driving and, without asking her name, searched the car for Lopez's personal identification. They found methamphetamine in a purse sitting on the front passenger's seat.

The trial court held the search was invalid under *Arizona v. Gant* (2009) 556 U.S. 332 (*Gant*), which narrowed the scope of permissible warrantless vehicle searches incident to a driver's arrest. The Court of Appeal reversed. It held that the search was authorized under this court's pre-*Gant* decision in *In re Arturo D.* (2002) 27 Cal.4th 60 (*Arturo D.*), which allowed police to conduct warrantless vehicle searches for personal identification documents at traffic stops when the driver failed to provide a license or other personal identification upon request.

We granted review to consider the application and continuing validity of the *Arturo D.* rule in light of subsequent legal developments. At the time *Arturo D.* was decided, no other state or federal court had recognized an exception to the Fourth Amendment's warrant requirement for suspicionless traffic-stop

vehicle searches. The same holds true today; California remains the only state to have recognized such an exception. Considering the issue in light of more recent decisions from both the United States Supreme Court and our sister states, we now conclude that the desire to obtain a driver's identification following a traffic stop does not constitute an independent, categorical exception to the Fourth Amendment's warrant requirement. To the extent *Arturo D.* held otherwise, we conclude that rule should no longer be followed. We reverse the judgment of the Court of Appeal and remand for further proceedings.

## I.

On the morning of July 4, 2014, City of Woodland Police Officer Jeff Moe responded to an anonymous tip concerning erratic driving. The tip described the car, a dark-colored Toyota, and the area in which it was driving. Unable to locate the vehicle, Officer Moe asked dispatch to run a computer search of the license plate, then drove by the address where the car was registered. Not seeing the vehicle, he resumed his duties.

Around 1:30 p.m., Officer Moe received a second anonymous report concerning the same car. The tipster identified the car's location and asserted the driver, whom the tipster identified as "Marlena," "had been drinking all day." Again unable to locate the car, Officer Moe returned to the address where the car was registered. This time, he parked and waited. A few minutes later, defendant Maria Elena Lopez drove up and parked in front of the house.

Moe did not observe any traffic violations or erratic driving. But believing the driver to be "Marlena," Officer Moe

approached the car. Moe testified at the suppression hearing that Lopez saw him, looked nervous, got out of the car, and began walking away from him. Moe did not smell alcohol or note any other signs of intoxication. But because he "wanted to know what her driving status was based on the allegations earlier, plus [he] wanted to identify who she was," Moe asked Lopez if she had a driver's license. Lopez said that she did not. Without asking Lopez for her name or other identifying information, Moe detained her by placing her in a control hold. When Lopez tried to pull away, Moe handcuffed her.

Officer Moe then asked Lopez "if she had . . . any identification possibly within the vehicle." When Lopez responded "there might be," a second officer on the scene opened the passenger door, retrieved a small purse from the passenger seat, and handed it to Moe. Moe then searched the purse and found a baggie containing methamphetamine in a side pocket.

Lopez was charged with misdemeanor violations of possessing methamphetamine (Health & Saf. Code, § 11377, subd. (a)) and driving when her license to drive had been suspended or revoked (Veh. Code, § 14601.2, subd. (a)). She filed a motion to suppress evidence (Pen. Code, § 1538.5, subd. (a)(1)), arguing she had been unlawfully detained and her purse unlawfully searched.

The trial court granted the suppression motion. The court concluded the initial contact between Lopez and Officer Moe after she exited her vehicle was consensual. Once Lopez told Moe she did not have a license, the officer also had probable cause to detain and arrest her for driving without a valid license. (See Veh. Code, § 12500, subd. (a) ["A person may not drive a motor vehicle upon a highway, unless the person then holds a

valid driver's license issued under this code"].) But the trial court concluded that the ensuing search of Lopez's vehicle was invalid because neither of the justifications for conducting a vehicle search incident to arrest under *Gant*, *supra*, 556 U.S. 332, was present. *Gant* held that a vehicle search incident to arrest is justified only if it is reasonable to believe the suspect can gain access to weapons inside the vehicle or that evidence of the offense of arrest might be found inside the vehicle. (*Id.* at p. 335.) Here, Lopez was handcuffed at the rear of her car when the search took place and could not reach any weapons inside the car. Nor was there any likelihood a search of the car would produce evidence of Lopez's driving without a license in her possession.[1] With the evidence suppressed, the trial court dismissed the case.

The Court of Appeal reversed the suppression ruling. The appellate court explained that *Gant* was not applicable because Lopez had not been formally arrested, only detained, at the time of the search. (*People v. Lopez* (2016) 4 Cal.App.5th 815, 827–828.) The authority for the search was therefore not the search incident to arrest exception at issue in *Gant*, but the traffic-stop identification-search exception recognized in *Arturo D.*, *supra*, 27 Cal.4th 60. (*Lopez*, at pp. 825–826.) Once Lopez told Officer Moe that she did not have a driver's license, Officer Moe had cause to believe Lopez had driven without a license in violation

---

[1]   The trial court also concluded the People had not supplied support for a search for evidence of driving under the influence. The first anonymous tip was remote in time, the second was vague and conclusory, Officer Moe observed nothing to indicate Lopez was under the influence, and the hearing testimony made clear the search was directed at finding identification.

of the Vehicle Code. (*Id.* at p. 825; see Veh. Code, § 12500, subd. (a).) Under *Arturo D.*, the police were then permitted to search Lopez's vehicle for other forms of identification in order to ensure that any citation and notice to appear for the Vehicle Code violation reflected Lopez's true identity. (*Lopez*, at p. 826.) If *Arturo D.* "is still good law," the Court of Appeal concluded, "the search in this case was reasonable under the Fourth Amendment." (*Lopez*, at p. 825.)

We granted review.

## II.

## A.

The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures." In general, a law enforcement officer is required to obtain a warrant before conducting a search. (*Vernonia School Dist. 47J v. Acton* (1995) 515 U.S. 646, 653.) Warrantless searches "are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." (*Katz v. United States* (1967) 389 U.S. 347, 357, fns. omitted; accord, *People v. Redd* (2010) 48 Cal.4th 691, 719 ["A warrantless search is presumed to be unreasonable"].) Whether a particular kind of search is exempt from the warrant requirement ordinarily depends on whether, under the relevant circumstances, law enforcement's need to search outweighs the invasion of individual privacy. (*Riley v. California* (2014) 573 U.S. 373, 385; *Delaware v. Prouse* (1979) 440 U.S. 648, 654; *Camara v. Municipal Court* (1967) 387 U.S. 523, 536–537.)

In *Arturo D., supra*, 27 Cal.4th 60, we considered the existence and scope of an exception permitting officers to

conduct a warrantless vehicle search when a driver pulled over for a traffic infraction is unable to produce the required documentation in response to an officer's request. *Arturo D.* involved two consolidated cases in which law enforcement officers had detained drivers for traffic infractions and the drivers could produce neither a driver's license nor the vehicle's registration in response to the officers' requests. In one case, the officer entered the defendant's truck and reached under the driver's seat. The officer did not locate any relevant documents but did discover a box that later was found to contain methamphetamine. In the other case, the officer entered the defendant's car and looked first in the glove compartment and then under the front passenger seat, finding a wallet that contained a baggie of methamphetamine. (*Arturo D.*, at pp. 65–67.)

*Arturo D.* upheld both searches. The opinion concluded that when a driver has been detained for a traffic infraction and fails to produce vehicle registration or personal identification documentation upon request, the Fourth Amendment "permits limited warrantless searches of areas within a vehicle where such documentation reasonably may be expected to be found." (*Arturo D.*, *supra*, 27 Cal.4th at p. 65.)

Although *Arturo D.* upheld warrantless searches for both vehicle registration and personal identification, its reasoning focused primarily on the former rather than the latter. In explaining the basis for this exception to the Fourth Amendment's warrant requirement, *Arturo D.* relied heavily on various California and out-of-state cases upholding warrantless searches of vehicles for the purpose of locating the vehicle registration. (*Arturo D.*, *supra*, 27 Cal.4th at p. 71 & fn. 7 [citing

*People v. Webster* (1991) 54 Cal.3d 411 and various Court of Appeal cases]; see also *Arturo D.*, at p. 76, fn. 16 [citing additional out-of-state cases concerning searches for vehicle registration].)[2]  *Arturo D.* did not identify any prior cases, either from California or elsewhere, that had concluded the need to locate a driver's license or other form of personal identification could alone justify a warrantless search.  But *Arturo D.* reasoned that a similar balance of interests should yield the same result for both vehicle registration and personal identification searches.  On the one hand, the state has an important interest in identifying drivers so that it can properly cite them for traffic violations.  (*Arturo D.*, at p. 67.)  And on the other hand, drivers have a "reduced expectation of privacy while driving a vehicle on public thoroughfares."  (*Id.* at p. 68, citing *New York v. Class* (1986) 475 U.S. 106, 112–113 (*Class*).)  While officers have the power to arrest drivers who violate the Vehicle Code by failing to keep their licenses in their possession while driving, an arrest "in most circumstances would subject the driver to considerably greater intrusion."  (*Arturo D.*, at p. 76, fn. 17.)  *Arturo D.* concluded it is therefore permissible for the officer to search those areas of the vehicle in which the necessary documentation "reasonably may be expected to be found."  (*Id.* at p. 65; see also *id.* at pp. 78, 79, 84, 86.)[3]

---

[2]    The portion of *Arturo D.*, *supra*, 27 Cal.4th 60, upholding a search for registration documents is not at issue in this case.

[3]    The dissent would reconceptualize *Arturo D.* as applying only to "places in the vehicle where a driver, slowing to a halt, might quickly put or toss a wallet or similar container."  (Dis. opn. *post*, at p. 11; see *id.* at p. 10.)  The standard this court

As *Arturo D.* acknowledged, the United States Supreme Court had previously held that the Fourth Amendment does not permit law enforcement to search the vehicle of a person who has been cited, but not arrested, for a traffic violation. (*Knowles v. Iowa* (1998) 525 U.S. 113 (*Knowles*).) *Knowles* had invalidated a vehicle search after the driver had been ticketed for speeding, a search conducted under what the court termed a putative "'search incident to citation'" exception to the Fourth Amendment's warrant requirement. (*Knowles*, at p. 115.) *Knowles* dismissed the state's argument that "a 'search incident to citation' is justified because a suspect who is subject to a routine traffic stop may attempt to hide or destroy evidence related to his identity (*e.g.*, a driver's license or vehicle registration)." (*Id.* at p. 118.) "[I]f a police officer is not satisfied with the identification furnished by the driver," the court responded, "this may be a basis for arresting him rather than merely issuing a citation." (*Ibid.*)

*Arturo D.* acknowledged the high court's guidance on this point but distinguished *Knowles* on the ground that the case concerned a full search of the entire vehicle "*following* the issuance of a traffic citation," not a search for documentation "*prior* to issuing a traffic citation," limited to the areas in which

---

actually embraced, directly quoted in the text above, is considerably broader. It extends beyond places a driver might hide identification at the last second; it also includes other places where a driver, not trying to conceal identification, might "store" his or her identification as a matter of routine or habit. (*Arturo D.*, *supra*, 27 Cal.4th at p. 87.) Thus, containers in which identification might be expected to be kept are subject to search even if they could not have been accessed in the moments when the driver was being pulled over.

such documentation might reasonably be found. (*Arturo D.*, *supra*, 27 Cal.4th at p. 76, fn. omitted.) Because the high court had never considered whether the Fourth Amendment permits warrantless traffic-stop searches *for documentation*, as opposed to contraband (*Arturo D.*, at p. 79), *Arturo D.* rejected the drivers' arguments that *Knowles* foreclosed the recognition of such an exception to the warrant requirement.

*Arturo D.* found reassurance in a second high court decision, *Class*, *supra*, 475 U.S. 106, in which the court had upheld a traffic-stop search for a Vehicle Identification Number (VIN) that had been covered by papers on the car's dashboard. (*Arturo D.*, *supra*, 27 Cal.4th at pp. 71–74; see *Class*, at pp. 116–119.) *Class* had emphasized law enforcement's important interest in tracking stolen vehicles and promoting highway safety, drivers' decreased expectation of privacy when driving automobiles on public roads, and the relatively limited nature of the VIN search. (*Class*, at pp. 111–114, 118–119; see *Arturo D.*, at p. 72.) *Arturo D.* concluded that this reasoning and approach was "not inconsistent" with approving a limited warrantless search for registration documents or driver identification. (*Arturo D.*, at p. 73.)

Three justices dissented from *Arturo D.*'s traffic-stop identification-search holding. Although Justice Werdegar agreed with *Arturo D.*'s holding as to registration searches, she argued that the logic of the identification-search exception would take officers not only into glove compartments and visors, but also into drivers' pockets and purses. She saw no adequate justification for granting law enforcement such authority whenever a driver who has committed a traffic infraction fails to produce a license upon request. (*Arturo D.*, *supra*, 27 Cal.4th

at pp. 89–91 (conc. & dis. opn. of Werdegar, J.).) Justice Kennard, joined by Justice Brown, opined that granting officers such authority was inconsistent with *Knowles*, *supra*, 525 U.S. 113. And despite the majority's assurance that the identification-search authority was "limited"—and thus unlike the "full-scale" search invalidated in *Knowles* (*Arturo D.*, at p. 75)—Justice Kennard opined that the exception "may well result in limitless searches throughout a vehicle whenever a driver cannot produce the requisite documentation." (*Arturo D.*, at p. 91 (dis. opn. of Kennard, J.).)

**B.**

In this case, police searched a driver's purse after detaining her for a traffic violation. This is not a scenario squarely addressed in *Arturo D.* Although Justice Werdegar's partial dissent had argued that this is where the logic of the identification-search rule would lead, the majority opinion neither responded to the point nor otherwise directly addressed the application of its rule to these circumstances.

Nevertheless, although Lopez briefly argues otherwise, there is no real question that the search in this case was conducted in accordance with *Arturo D.*'s general guidance. Officer Moe approached Lopez as she got out of her car and asked whether she had a driver's license. Lopez concedes that by answering no, she admitted that she had committed, at a minimum, the traffic infraction of driving a car without physical possession of a license. (Veh. Code, § 12951, subd. (a).) That admission gave Officer Moe the authority to detain her for a reasonable period to determine whether to issue a traffic citation and to conduct the " 'ordinary inquiries incident to [the traffic] stop,' " which generally include verifying the driver's

identity. (*Rodriguez v. U.S.* (2015) 575 U.S. ___, ___ [135 S.Ct. 1609, 1615]; see *U.S. v. Sharpe* (1985) 470 U.S. 675, 683–686; cf. *People v. McGaughran* (1979) 25 Cal.3d 577, 585–587.)[4] And under *Arturo D.*, Lopez's inability to produce a driver's license also gave Officer Moe the authority to search her vehicle for the license or other forms of personal identification.[5]

---

[4] The temporary detention may sometimes also include a "determin[ation] whether there are outstanding warrants against the driver" (*Rodriguez v. U.S.*, *supra*, 135 S.Ct. at p. 1615) and a criminal history check (*U.S. v. Purcell* (11th Cir. 2001) 236 F.3d 1274, 1278), which is done by consulting an in-car computer terminal or radioing dispatch (see, e.g., *People v. McGaughran*, *supra*, 25 Cal.3d at pp. 584–585, fn. 6; 4 LaFave, Search and Seizure (5th ed. 2012) § 9.3(c), pp. 511–513).

[5] Lopez argues in passing that *Arturo D.* does not apply because the incident was a consensual encounter. This is a strange way to describe an interaction that ended with Lopez in handcuffs. True, the encounter did begin consensually, as the trial court found. But once Lopez indicated she had no license, the officer had grounds to detain Lopez and determine whether she indeed had been driving without a valid license. At that point, *Arturo D.* authorized a warrantless search for identification if Lopez could not produce any.

Lopez also takes a contradictory tack, urging she was already under arrest when the search was conducted and so only a search for weapons or evidence of the crime of arrest would have been permissible. (See *Gant*, *supra*, 556 U.S. at pp. 342–344.) The record does not support this contention either. At the time of the search, Lopez had been temporarily detained to enable Officer Moe to investigate and process her traffic violation. The handcuffing did not transform the detention into an arrest. (*People v. Celis* (2004) 33 Cal.4th 667, 675 ["stopping a suspect at gunpoint, handcuffing him, and making him sit on the ground for a short period, as occurred here, do not convert a detention into an arrest"]; see *ibid.* [citing additional cases].)

The search in this case does, as mentioned, differ from the searches at issue in *Arturo D.* in that it focused on the driver's purse. But that the purse was within the scope of the officer's search authority under *Arturo D.* is beyond reasonable dispute; a purse is, after all, "[t]he most 'traditional repository' of a driver's license" for a certain class of drivers. (*Arturo D.*, *supra*, 27 Cal.4th at p. 90 (conc. & dis. opn. of Werdegar, J.).) Lopez argues the search nonetheless violated *Arturo D.* because officers proceeded directly to searching her vehicle for identification instead of first asking her who she was, allowing her to retrieve identification herself, or arresting her. *Arturo D.*, however, does not require officers to do any of these things. The rule adopted and applied in that case does not require officers to ask for oral identification before searching for physical documentation; to the contrary, *Arturo D.* upheld identification searches conducted even after each driver gave an officer truthful identifying information, including, in one case, his name, address, and date of birth. (*Id.* at pp. 65–66, 83–84.) Nor does *Arturo D.* require officers to allow persons detained outside the vehicle to reach into the vehicle to retrieve identification themselves—even where, as here, officers did not testify to particularized safety concerns. (*Id.* at pp. 84–85.) Finally, *Arturo D.* pointedly held it was not unreasonable for law enforcement to search the vehicle for personal identification instead of either asking for the driver's consent to search or arresting the driver if unsatisfied with the driver's identification, as the high court had suggested in *Knowles*. (*Arturo D.*, at pp. 76–77, fn. 17; see *Knowles*, *supra*, 525 U.S. at p. 118.)

As the Court of Appeal correctly surmised, the central issue in this case is not whether the search of Lopez's car was consistent with the guidance given in *Arturo D.* The issue, rather, is whether to continue to adhere to the rule of *Arturo D.*, notwithstanding subsequent legal developments casting doubt on the validity of a categorical rule authorizing warrantless vehicle searches whenever a driver stopped for a traffic infraction fails to produce a license or other satisfactory identification documents upon request.

## III.

### A.

Lopez's primary argument concerns the effect of the United States Supreme Court's 2009 decision in *Gant*, *supra*, 556 U.S. 332, on which the trial court relied in invalidating the search of Lopez's car. The Court of Appeal correctly held that *Gant* is not directly applicable here because it concerned a different exception to the Fourth Amendment's warrant requirement. But Lopez contends that the reasoning of *Gant* nonetheless undermines the validity of the *Arturo D.* identification-search exception.

The question in *Gant* concerned the scope of the exception governing vehicle searches incident to the arrest of the driver or another recent occupant. In *Chimel v. California* (1969) 395 U.S. 752, 762–763, the court had held that law enforcement may conduct a warrantless search incident to a person's arrest for certain safety or evidentiary reasons: specifically, to disarm the person or to prevent the person from destroying evidence. Some years later, in *New York v. Belton* (1981) 453 U.S. 454, the high court applied *Chimel* in the context of a vehicle stop. After

pulling a driver over for speeding, an officer discerned evidence of marijuana use in the vehicle. The officer ordered the occupants out of the car and arrested them for drug offenses, then searched the vehicle. The high court upheld the search under *Chimel*, holding that when an officer lawfully arrests a person who has recently occupied a car, the officer may "search the passenger compartment of that automobile" and any interior containers as areas " 'into which an arrestee might reach in order to grab a weapon or evidentiary ite[m].' " (*Belton*, at p. 460, quoting *Chimel*, at p. 763.)

*Belton* was "[f]or years . . . widely understood to have set down a simple, bright-line rule" permitting vehicle "searches incident to arrests of recent occupants, regardless of whether the arrestee in any particular case was within reaching distance of the vehicle at the time of the search." (*Davis v. United States* (2011) 564 U.S. 229, 233.) This trend was exemplified by the facts of *Thornton v. United States* (2004) 541 U.S. 615 (*Thornton*), a case decided not long after our decision in *Arturo D.* In *Thornton*, the court upheld a *Belton* search for weapons or evidence even though the driver had exited the vehicle before the police encounter and was handcuffed and in the back of a patrol car at the time of the search. (*Thornton*, at pp. 617–618.) Rejecting a proposed rule that would limit *Belton* searches depending on whether police initiated contact with the suspect while he was still in the car or after, the majority opined that the "need for a clear rule, readily understood by police officers . . . justifies the sort of generalization which *Belton* enunciated." (*Thornton*, at p. 623.) But a number of justices—collectively representing a majority of the court—expressed dissatisfaction with the broad scope of the *Belton* rule and how it had been

applied in the lower courts. (See *Thornton*, at p. 624 (conc. opn. of O'Connor, J.); *id.* at pp. 625–632 (conc. opn. of Scalia, J., joined by Ginsburg, J.); *id.* at pp. 633–636 (dis. opn. of Stevens, J., joined by Souter, J.).)

The court revisited the issue in *Gant* and this time reached a different conclusion. The defendant in that case had been arrested for driving with a suspended license. While he was handcuffed in the back of a locked patrol car, police officers searched his vehicle and found drugs. The United States Supreme Court invalidated the search. The court held that a *Belton* search for weapons or destructible evidence is permitted only when an arrestee is actually capable of reaching the area to be searched. (*Gant, supra,* 556 U.S. at p. 343 & fn. 4.) Drawing on Justice Scalia's *Thornton* concurrence, the court also allowed searches for evidence " 'relevant to the crime of arrest' "—a justification rooted in historical practice. (*Gant*, at p. 343, quoting *Thornton, supra,* 541 U.S. at p. 632 (conc. opn. of Scalia, J.).) But in *Gant*, as in most cases involving arrests for traffic violations, there was no chance of finding relevant evidence inside the car. (*Gant*, at p. 344; see *Knowles, supra,* 525 U.S. at p. 118.)

The high court rejected the state's argument that a broader, more categorical rule authorizing vehicle searches incident to arrest "correctly balances law enforcement interests, including the interest in a bright-line rule, with an arrestee's limited privacy interest in his vehicle." (*Gant, supra,* 556 U.S. at p. 344.) On one side of the balance, the court noted, the argument "seriously undervalues the privacy interests at stake[:] Although we have recognized that a motorist's privacy interest in his vehicle is less substantial than in his home, see

15

. . . *Class,* [*supra,*] 475 U.S. [at pp.] 112–113 . . . , the former interest is nevertheless important and deserving of constitutional protection, see *Knowles,* [*supra,*] 525 U.S.[] at p. 117. It is particularly significant that *Belton* searches authorize police officers to search not just the passenger compartment but every purse, briefcase, or other container within that space. A rule that gives police the power to conduct such a search whenever an individual is caught committing a traffic offense, when there is no basis for believing evidence of the offense might be found in the vehicle, creates a serious and recurring threat to the privacy of countless individuals. Indeed, the character of that threat implicates the central concern underlying the Fourth Amendment—the concern about giving police officers unbridled discretion to rummage at will among a person's private effects." (*Gant,* at pp. 344–345, fn. omitted.)

Turning to the law enforcement interests on the other side of the balance, the court found little to commend a rule that permits *Belton* searches regardless of the suspect's ability to access the vehicle at the time of the search or the likelihood of finding offense-related evidence inside. "Construing *Belton* broadly to allow vehicle searches incident to any arrest would serve no purpose except to provide a police entitlement, and it is anathema to the Fourth Amendment to permit a warrantless search on that basis." (*Gant, supra,* 556 U.S. at p. 347.)

## B.

In cutting back the prevailing understanding of permissible vehicle searches incident to arrest, *Gant* neither considered nor disapproved *Arturo D.*'s rule authorizing prearrest searches for driver identification. That is hardly surprising: as *Arturo D.* itself acknowledged, the high court has

never *approved* a prearrest search for identification, either. (*Arturo D.*, *supra*, 27 Cal.4th at p. 79; see *id.* at p. 73.) Nor is that the end of our inquiry today.

It is important to remember that the question before us is a question of federal constitutional law, not one of state law. In matters of federal law, the United States Supreme Court has the final word; we operate as an intermediate court and not as a court of last resort. In such matters, although we recognize the importance of following precedent in our judicial system, we also recognize that our role in that system sometimes requires us to reevaluate our precedent in light of new guidance. "When emergent [United States] Supreme Court case law calls into question a prior opinion of another court, that court should pause to consider its likely significance before giving effect to an earlier decision." (*Carpenters Local Union No. 26 v. U.S. Fidelity & Guar. Co.* (1st Cir. 2000) 215 F.3d 136, 141.) This is so even when the high court's decision does not directly address the continuing validity of the rule in question; the high court's guidance may nonetheless erode the analytical foundations of the old rule or make clear that the rule is substantially out of step with the broader body of relevant federal law. (See, e.g., *People v. Anderson* (1987) 43 Cal.3d 1104, 1138–1141; *id.* at p. 1141 ["it is our duty to reconsider" precedent when subsequent United States Supreme Court decisions cast doubt on our reading of that court's earlier decisions]; see also, e.g., *People v. Gallardo* (2017) 4 Cal.5th 120, 134–135 [reconsidering precedent in light of reasoning of subsequent high court decisions].) Of necessity, then, we retain "the flexibility to consider emerging United States Supreme Court case law when considering earlier decisions on federal issues . . . even when the

17

newer cases have not directly overruled or superseded [our] prior cases." (*W.G. Clark Const. Co. v. Pacific Northwest Regional Council of Carpenters* (2014) 180 Wn.2d 54, 66.)

*Arturo D.* itself had taken its cues from high court precedent concerning other types of vehicle searches, taking care to ensure the exception was "not inconsistent" with the reasoning and general approach of these cases. (*Arturo D., supra,* 27 Cal.4th at p. 73.) In fashioning a new identification-search exception to the warrant requirement, *Arturo D.* concluded, in light of then-available guidance, that the state's interests in conducting such a search outweighed the degree of privacy intrusion. (See, e.g., *Delaware v. Prouse, supra,* 440 U.S. at p. 654.) The reasoning of *Gant* offers additional, highly relevant guidance not available at the time of *Arturo D. Gant* speaks clearly to the stakes on each side, and its reasoning calls for a reappraisal of the proper balance of interests to ensure consistency with the larger body of Fourth Amendment law.

On the privacy side of the scales, *Gant* cautions against "undervalu[ing] the privacy interests at stake" in the context of vehicle searches. (*Gant, supra,* 556 U.S. at pp. 344–345.) The opinion in *Arturo D.* contained no discussion of the magnitude of the intrusion associated with a search for a driver's license or other proof of identity. *Arturo D.* found reassurance in the high court's reasoning in *Class,* which held that an officer did not act unreasonably in shifting papers on a dashboard to read the car's VIN, without ever acknowledging the very different privacy implications of permitting officers to look through drivers' wallets and purses for their personal identification. (See *Arturo D., supra,* 27 Cal.4th at pp. 71–74, discussing *Class, supra,* 475 U.S. 106.) *Arturo D.*'s discussion of privacy instead

was limited to citing high court authority for the proposition that drivers "have a reduced expectation of privacy while driving a vehicle on public thoroughfares." (*Arturo D.*, at p. 68, citing *Class*, at pp. 112–113.)

*Gant* reaffirms this proposition, but clarifies that while a "motorist's privacy interest in his vehicle is less substantial than in his home [citation], the former interest is nevertheless important and deserving of constitutional protection." (*Gant, supra*, 556 U.S. at p. 345.) It then goes on to explain that a rule that permits police officers to search vehicles (and the purses and other containers therein) "whenever an individual is caught committing a traffic offense" is not only a "serious and recurring threat to . . . privacy," but a threat that "implicates the central concern underlying the Fourth Amendment—the concern about giving police officers unbridled discretion to rummage at will among a person's private effects." (*Gant*, at p. 345, fn. omitted.)

Although *Gant* addresses a different exception to the warrant requirement, its relevance here is hard to miss. The identification-search exception, after all, is also a rule that permits officers to search vehicles, including—*especially including*—purses, briefcases, and other personal effects contained therein. It applies "whenever an individual is caught committing a traffic offense" (*Gant, supra*, 556 U.S. at p. 345)—even one that will simply result in a traffic ticket, and not an arrest as in *Gant*—and is unable to produce identification upon request. Where *Arturo D.* had contained no explicit acknowledgment of this incursion on privacy, *Gant* makes clear that this qualifies as a "serious" privacy threat that goes to the very core of the Fourth Amendment's protections. (*Gant*, at p. 345.) Indeed, the intrusion on privacy in the *Arturo D.* setting

is arguably greater than the intrusion in *Gant*:  While the privacy interests of an arrestee are necessarily diminished to some extent by the very fact of having been arrested (see, e.g., *Riley v. California, supra,* 573 U.S. at pp. 391–392), *Arturo D.* applies to individuals who are merely *detained* for having committed a traffic violation.  Such individuals have at least an equal, if not greater interest in officers not "rummag[ing] at will" through their belongings.  (*Gant*, at p. 345.)

The dissent suggests drivers' privacy concerns are overblown because *Arturo D.* outlined a series of limits to the identification-search power.  Among other things, *Arturo D.* cautioned that the power is not to be used as a pretext to search for contraband and that the searches must be targeted to focus on the areas in which identification is likely to be found.  (Dis. opn. *post*, at pp. 9–10.)  As the dissent notes, these limitations were important to *Arturo D.*'s identification-search holding— indeed, they were arguably crucial, given the high court's disapproval of vehicle searches " 'incident to [traffic] citation' " in *Knowles, supra,* 525 U.S. at page 118.  But experience in the years since *Arturo D.* was decided has lent credence to Justice Kennard's fear that its "new rule [might] well result in limitless searches throughout a vehicle" that are indistinguishable in effect from the kind of search disapproved in *Knowles*.  (*Arturo D., supra,* 27 Cal.4th at p. 91 (dis. opn. of Kennard, J.).)  *Arturo D.* has been used as authority to uphold searches into purses, bags, center consoles, and glove compartments, under both driver and passenger seats, into backpacks in the bed of a truck, and up the sleeves of a jacket lying in the well behind the front seats of an SUV.

None of this is surprising. As much as *Arturo D.* attempted to cordon off the authority it granted from the full-scale vehicle searches disapproved in *Knowles*, the inevitable consequence of a categorical rule authorizing officers to look for identification in places where they might reasonably believe the identification is located, or where it might have been hidden, is that officers will look throughout the area "into which [the driver] might reach," much as they would if they were conducting a vehicle search incident to arrest. (*Chimel v. California, supra,* 395 U.S. at p. 763.) Officers will naturally focus in particular on purses, wallets, briefcases, and other similar personal effects where identification is typically carried but the intrusion into privacy is also at its apex. And given an officer's authority to seize any " 'evidence in plain view from a position where the officer has a right to be' " (*Arturo D., supra,* 27 Cal.4th at p. 70), in practice the scope of the authority granted under *Arturo D.* has proved perilously close to the "full-scale search for contraband" we acknowledged was expressly prohibited by *Knowles, supra,* 525 U.S. 113 (*Arturo D.,* at p. 86). The privacy interests at stake in such a regime are weighty—certainly weightier than *Arturo D.* had recognized.

Although *Gant* speaks most clearly to the privacy side of the balance, it also offers by example important guidance about how to weigh the law enforcement interests on the other side of the scale. The justification for the search incident to arrest exception, *Gant* emphasized, is ultimately only to permit law enforcement to respond to particular safety or evidentiary concerns that may arise during the course of the arrest of a driver or recent occupant of a vehicle. (*Gant, supra,* 556 U.S. at pp. 335, 347.) To ensure the scope of the exception did not

become "untether[ed]" from its justifications, *Gant* insisted that the exception be limited to the subset of arrests in which genuine safety or evidentiary concerns are present—that is, cases in which officers reasonably believed the arrestee could have accessed a weapon or destructible evidence in the car at the time of the search, or that evidence of the offense for which the person was arrested might be found in the car. (*Id.* at p. 343.) In other words, courts must pay close attention to the presence or absence of the circumstances that justify breaching a person's privacy by searching a vehicle and the personal effects contained therein. (See also *Riley v. California, supra,* 573 U.S. at pp. 401–403 [confining any exception for warrantless cellphone searches to exigent circumstances or a like case-specific showing of police necessity].)

The justification for *Arturo D.*'s identification-search exception was the need to ensure that a law enforcement officer has the information necessary to issue a citation and notice to appear for a traffic infraction—despite drivers' incentives to conceal that information, and notwithstanding safety concerns that might arise if officers were compelled to allow drivers to retrieve the relevant documents themselves. (*Arturo D., supra,* 27 Cal.4th at pp. 67, 70, fn. 6, 79.) To give effect to these important interests, *Arturo D.* considered a limited warrantless search to be more reasonable than the alternative of subjecting the driver to full custodial arrest, which would impose substantially greater burdens on drivers and law enforcement alike. (*Id.* at p. 76, fn. 17.)

But *Arturo D.*'s discussion of the issue was not exhaustive. Indeed, experience and common sense suggest a range of options that are both less intrusive than a warrantless search and less

burdensome than a full custodial arrest. Closer attention to the presence or absence of circumstances justifying the invasion of privacy alters the appraisal of the law enforcement interests at stake: To the extent there are adequate alternative avenues for obtaining the information needed by law enforcement, the interest in searching a vehicle without a warrant necessarily carries less weight.

The first alternative is straightforward: an officer can ask questions. If a driver professes not to have a driver's license or other identification, the officer can ask for identifying information such as the driver's full name and its spelling, address, and date of birth. The answers need not be accepted at face value. Rather, they may be checked against Department of Motor Vehicles (DMV) records—just as driver's licenses themselves are routinely checked against such records to verify the driver's identity and the validity of the license. (See Gov. Code, §§ 15150–15167 [providing for statewide law enforcement telecommunications system]; Veh. Code, § 1810.5 [authorizing law enforcement telephone access to DMV records]; see also, e.g., *People v. Boissard* (1992) 5 Cal.App.4th 972, 978–979 [records check of individual who failed to produce identification at officer's request]; see generally 4 LaFave, Search and Seizure, *supra*, § 9.3(c), pp. 508–511 [noting that such records checks, which are typically conducted by computer or radio, are both routine and critical to the operation of any system of citation].) Similarly, the detainee's size and physical appearance, such as height, weight, eye color, and hair color, may be subject to verification against such records. (See *People v. Hunt* (1990) 225 Cal.App.3d 498, 503.) Officers may also check the name and address against the DMV's registration record for the vehicle

and explore any discrepancies.[6]  Officers have discretion to accept such oral evidence of identity for purposes of issuing a citation if they determine the information to be sufficiently reliable.  (*People v. McKay* (2002) 27 Cal.4th 601, 622 (*McKay*); *Arturo D.*, *supra*, 27 Cal.4th at p. 68, fn. 4.)  If, instead, officers have reason to believe they have been lied to, they have other options at their disposal, as discussed below.[7]

---

[6]  It perhaps states the obvious to observe that telecommunications technology has advanced significantly since 2002, when *Arturo D.* was decided, and will continue to evolve in ways that make remote verification of a detainee's information and identity easier for law enforcement.

[7]  In addition, an officer can ask for and examine written forms of identification other than a driver's license, such as a student identification or health insurance card.  As we acknowledged in *Arturo D.*, the Vehicle Code "permits an officer who plans to issue a Vehicle Code citation to accept 'other satisfactory evidence of [the driver's] identity.'"  (*Arturo D.*, *supra*, 27 Cal.4th at p. 68, fn. 4, quoting Veh. Code, § 40302, subd. (a); cf., e.g., *U.S. v. Zubia-Melendez* (10th Cir. 2001) 263 F.3d 1155, 1161; *U.S. v. Reyes-Vencomo* (D.N.M. 2012) 866 F.Supp.2d 1304, 1338.)

And as case law demonstrates, in some circumstances, an officer may be personally acquainted with the driver or may be able to obtain adequate identifying information from others who are.  (*McKay*, *supra*, 27 Cal.4th at p. 622; see, e.g., *U.S. v. Davis* (11th Cir. 2010) 598 F.3d 1259, 1261 [after detainee gave false name, bystanders supplied true name, which officer was then able to verify].)

In the absence of other satisfactory identification, an officer "may require the arrestee to place a right thumbprint" on a notice to appear.  (Veh. Code, § 40500, subd. (a); accord, §§ 40303, subd. (a), 40504, subd. (a).)

The officer may also seek the driver's consent to search the vehicle for identification. (See *Schneckloth v. Bustamonte* (1973) 412 U.S. 218, 219 ["a search that is conducted pursuant to consent" is a well-established exception to the warrant and probable cause requirements].) The driver can then decide whether to permit the officer to retrieve the identification, and if so, whether to limit the places within the vehicle where the officer may look for it.

The Attorney General, echoing a suggestion in *Arturo D.*, dismisses the value of consent in this context; he suggests that any consented-to search might later be challenged as the product of coercion. (See *Arturo D., supra*, 27 Cal.4th at p. 76, fn. 17.) Perhaps so, but we are unwilling to assume that every such challenge would necessarily have merit. "Police officers act in full accord with the law when they ask citizens for consent. It reinforces the rule of law for the citizen to advise the police of his or her wishes and for the police to act in reliance on that understanding. When this exchange takes place, it dispels inferences of coercion." (*United States v. Drayton* (2002) 536 U.S. 194, 207.) If an officer asks for permission to enter a car to retrieve the driver's identification, we see no categorical reason why a driver may not validly consent to a full or limited search of the vehicle for that purpose, just as drivers regularly consent to other types of vehicle searches. (See, e.g., *Florida v. Jimeno* (1991) 500 U.S. 248, 249–250 [detained driver validly consented to search of his vehicle for narcotics]; *People v. Grant* (1990) 217

Cal.App.3d 1451, 1456–1462 [search of vehicle for identification valid based on consent].)[8]

Other established exceptions to the warrant requirement may also permit a vehicle search. For example, exigent circumstances may be shown based on the particular situation an officer faces. (*U.S. v. Haley* (8th Cir. 1978) 581 F.2d 723, 725–726; see *Riley v. California, supra,* 573 U.S. at p. 402 ["Such exigencies could include the need to prevent the imminent destruction of evidence in individual cases, to pursue a fleeing suspect, and to assist persons who are seriously injured or are threatened with imminent injury . . . [¶] . . . The critical point is that . . . the exigent circumstances exception requires a court to examine whether an emergency justified a warrantless search in each particular case"].)

In circumstances where an officer believes he or she has been given false identification information, other exceptions may come into play. At that point, the officer is no longer solely concerned with issuing an enforceable traffic citation; lying to a police officer about one's identity is a criminal offense punishable by imprisonment in county jail. (Pen. Code, § 148.9; Veh. Code, §§ 31, 40000.5.) Under the automobile exception to the warrant requirement, an officer may search a vehicle if the

---

[8] At oral argument, the Attorney General noted that the Supreme Court has placed limits on the extent to which a motorist may be *implied* to have consented to a search by virtue of choosing to drive on public roads. (See *Birchfield v. North Dakota* (2016) 579 U.S. ___, ___–___ [136 S.Ct. 2160, 2185–2186].) We do not suggest consent could be implied here, only that express consent could be sought, and no reason appears as to why, if granted, it would be presumptively invalid.

officer has probable cause to believe that evidence of a crime will be found inside. (E.g., *United States v. Ross* (1982) 456 U.S. 798, 799.) Ordinarily, a driver's license or other identification will supply no evidence of a traffic violation. (See *State v. Scheer* (1989) 99 Or.App. 80, 83 [781 P.2d 859, 860].) But identification may well supply evidence of the crime of lying about one's identity (see, e.g., *State v. Fesler* (1984) 68 Or.App. 609, 613 [685 P.2d 1014, 1017]), and an officer may search a vehicle upon probable cause to believe evidence of such lying will be found therein (*State v. Bauman* (Minn.Ct.App. 1998) 586 N.W.2d 416, 422). Relatedly, some out-of-state courts have upheld vehicle searches for identification under the search incident to arrest exception, which authorizes searching an arrestee's vehicle for evidence relevant to his or her crime when an officer has reason " 'to believe evidence relevant to the crime of arrest might be found in the vehicle.' " (*Gant*, *supra*, 556 U.S. at p. 343; see *Deemer v. State* (Alaska Ct.App. 2010) 244 P.3d 69, 75 [search incident to arrest for lying to officer]; *State v. Gordon* (1991) 110 Or.App. 242, 245–246 [821 P.2d 442, 443–444] [same]; *Armstead v. Com.* (2010) 56 Va.App. 569, 577 [695 S.E.2d 561] [same].)[9]

The permissibility of such searches depends in the first instance on the existence of probable cause to believe that a particular driver is, in fact, lying about his or her identity. Thus, for example, in *Armstead*, the court explained that the officer

---

[9]     The automobile exception and the "evidence relevant to the crime of arrest" exception overlap to some degree, but the former applies independent of any arrest. To the extent the latter exception is contingent on an arrest, we express no view whether any search may come before, or only after, the arrest. (Cf. *People v. Macabeo* (2016) 1 Cal.5th 1206, 1216–1219.)

had probable cause to believe the driver was lying about his identity based on computer checks, notified the driver he was under arrest, and therefore could search the vehicle for evidence of the crime of providing false identity information. (*Armstead v. Com.*, *supra*, 695 S.E.2d at pp. 563–566 [upholding search under *Gant*].) *Arturo D.*, in contrast, had authorized a search any time a detainee is unable to supply identification—without any requirement that the officer have probable cause or even a reasonable suspicion that the detainee has lied about his or her identity.[10]

When an officer has obtained satisfactory evidence of a detainee's identity, he or she may cite and release the detainee. (Pen. Code, § 853.5, subd. (a); Veh. Code, §§ 40303, 40500, 40504; *People v. Superior Court* (*Simon*) (1972) 7 Cal.3d 186, 199.)[11] The officer also has discretion to release the suspect with

---

[10] In so doing, *Arturo D.* authorized a new sort of suspicionless search. The high court has long held that "[e]xceptions to the requirement of individualized suspicion are generally appropriate only where the privacy interests implicated by a search are minimal and where 'other safeguards' are available 'to assure that the individual's reasonable expectation of privacy is not "subject to the discretion of the official in the field." ' " (*New Jersey v. T. L. O.* (1985) 469 U.S. 325, 342, fn. 8, quoting *Delaware v. Prouse, supra*, 440 U.S. at pp. 654–655.) After *Gant*, the privacy interests implicated by identification searches cannot be dismissed as minimal. And the Attorney General has identified no "safeguards" that would limit an officer's discretion to conduct such a search to facilitate writing a traffic citation.

[11] Citation and release is employed in a wide range of nonvehicle circumstances, from jaywalking to fare evasion to cyclist moving violations, yet no one argues that failure to

a warning against committing future violations. (Pen. Code, § 849, subd. (b)(1); *People v. McGaughran, supra,* 25 Cal.3d at p. 584.) And finally, if no other path seems prudent or permissible, the officer can arrest the detainee and take him or her to be booked into jail for the traffic violation. (Veh. Code, § 40302; *Atwater v. Lago Vista* (2001) 532 U.S. 318, 323; *Knowles, supra,* 525 U.S. at p. 118; *McKay, supra,* 27 Cal.4th at pp. 620–625.) In the end, arrest is one option—but it is certainly not the only alternative to a warrantless search.[12]

---

produce identification upon request, without more, justifies a warrantless search through pockets or purses. The idea that, without authority for a warrantless identification search unique to *this* context, officers will be forced to issue unenforceable citations and "traffic laws can be flouted with impunity" (dis. opn. *post,* at p. 14), is a fiction; an arrestee is eligible for citation and release only when the arrestee is "able to convince the officer—either by exhibiting his driver's license or by 'other satisfactory evidence'—that the name he is signing on the written promise to appear corresponds to his true identity" (*People v. Superior Court* (*Simon*), *supra,* 7 Cal.3d at p. 201; see Veh. Code, § 40302, subd. (a)).

[12] The dissent suggests that because custodial arrest is a possible outcome of such an encounter, authorizing officers to perform a warrantless, suspicionless, nonconsensual search of the driver's belongings actually "serves to *protect* [the] privacy interests" the Fourth Amendment was intended to safeguard. (Dis. opn. *post,* at p. 13.) This is a curious notion. In the absence of a categorical traffic-stop identification-search exception, both driver and officer would have precisely the same range of options for locating and producing identification; the only difference is that it would be up to the driver, not the officer, to decide whether to allow in whole or in part a search of the vehicle to supply the necessary identification. Stripping the driver of that choice cannot seriously be described as the option that better

The Fourth Amendment does not, of course, require law enforcement to employ the least intrusive means of achieving its objectives. (*Board of Ed. of Independent School Dist. No. 92 of Pottawatomie Cty. v. Earls* (2002) 536 U.S. 822, 837.) But the Fourth Amendment does require law enforcement to act reasonably. If, as *Gant* instructs, a substantial intrusion on personal privacy must be adequately justified by genuine need, the availability of so many alternative means for achieving law enforcement ends tends to undermine the notion that the intrusion is reasonable. (See *Birchfield v. North Dakota, supra,* 579 U.S. at pp. ___–___ [136 S.Ct. at pp. 2184–2185] [warrantless blood test of person suspected of driving while intoxicated violates 4th Amend. because equally effective less intrusive alternative exists]; *Delaware v. Prouse, supra,* 440 U.S. at p. 659 [striking down discretionary spot checks for driver's licenses and registration in light of "the alternative mechanisms available, both those in use and those that might be adopted" to satisfy the government's public safety interests].)

The dissent insists that warrantless identification searches are a necessary tool for coping with drivers who seek to deceive officers concerning their identity but who have left evidence of that deception in their vehicles. (Dis. opn. *post,* at pp. 4–7.) (For those who have not, any search would of course be futile.) This idea is belied by the great many cases in which officers have successfully ferreted out this sort of deception

_____

protects the constitutional right of the people to be secure in their persons and effects.

through the ordinary investigative techniques we have already described.[13]   And, as we have already explained, officers who have probable cause to believe a driver is lying about his or her identity already have search options at their disposal in appropriate circumstances.   (*Ante*, at pp. 26–28.)   But the warrant exception we are asked to apply here is not limited to cases of deception; it applies to honest drivers and dishonest drivers alike.   Indeed, it applies even when, as here, the driver has not so much as been given the chance to identify herself before having her vehicle, and the personal belongings contained therein, opened for official examination.

The dissent worries that in the absence of a categorical authorization to search, officers may not be able to achieve

---

[13]   A small but representative sample includes:  *People v. Casarez* (2012) 203 Cal.App.4th 1173, 1178 (identification based on distinctive tattoos); *Loveless v. State* (2016) 337 Ga.App. 894, 895 [789 S.E.2d 244, 245] (database search revealed driver had given false name; vehicle tag search revealed driver's true identity; license search on vehicle's registered owner provided driver's photograph); *State v. Cannady* (Me. 2018) 190 A.3d 1019, 1021 (officer transported driver to jail for fingerprinting after officer was unable to verify driver's identity with name supplied and driver "had difficulty providing an address, phone number, and social security number"; driver confessed to true identity en route to jail); *People v. Vasquez* (2001) 465 Mich. 83, 101–102 [631 N.W.2d 711, 722] (driver recognized by other officers during booking); *State v. Ford* (Mo.Ct.App.) 445 S.W.3d 113, 117 (confession to true identity following record check and further questioning); cf. *U.S. v. Pena-Montes* (10th Cir. 2009) 589 F.3d 1048, 1051 (database search revealed defendant had given false name and other identifying information; defendant's true identity revealed through fingerprinting).

absolute certainty about the identity of some subset of traffic violators before issuing traffic tickets. (Dis. opn. *post*, at pp. 4–9; see *id.* at p. 7 [driver may give sibling's name], p. 8, fn. 5 [driver may conceal face with a tinted visor or niqab].) But the same is true under the dissent's own proposed rule.[14] In the end, the test for whether an exception should be recognized is not whether, in its absence, there might be some cost in effective enforcement of the traffic laws; it is, instead, whether the tradeoff to lower that risk is worth the coin in diminished privacy. The price of giving officers the "discretion to rummage at will among a person's private effects" whenever that person has committed a traffic infraction is a high one. (*Gant, supra*, 556 U.S. at p. 345, fn. omitted.) It is not a price we should lightly require California drivers to pay.

Here, Officer Moe had a tip that provided the driver's name, and he was able to locate the driver because she pulled her car up in front of the address where dispatch informed him the vehicle was registered. He could have employed any one of several approaches to ascertain Lopez's identity once she exited the car. But Officer Moe never so much as asked Lopez her name. Instead, after detaining Lopez for a suspected traffic infraction, the officer proceeded directly to searching the purse on the passenger's seat. Under *Gant*, Officer Moe could not have searched Lopez's vehicle if he had arrested her for unlicensed

---

[14] The dissent's preferred rule would do nothing to assist in the apprehension of the wrongdoer who manages to slip his or her license into a crumpled fast-food bag (*Arturo D., supra*, 27 Cal.4th at p. 86)—or, for that matter, who simply left his or her license at home.

driving instead of simply detaining her.[15]  Searching Lopez's vehicle for her personal identification before she was arrested was no less unreasonable.

## C.

Although, as Lopez argues, *Gant* provides important guidance calling the identification-search exception into question, our consideration of the issue is not limited to that case.  Careful examination of the practices in other jurisdictions reinforces our conclusion that the search at issue here was not reasonable under the circumstances.

As noted, *Arturo D.*'s identification-search rule was an outlier when the case was first decided:  At the time *Arturo D.* was handed down, neither the United States Supreme Court nor any other state embraced—or, so far as our research reveals, ever had embraced—a similar exception for traffic-stop identification searches.  It remains an outlier today.  Indeed, 17 years after *Arturo D.* was decided, California still stands alone in authorizing warrantless vehicle searches for identification.

---

[15]  The Attorney General argues in passing that the search here would have been permissible under *Gant* because Officer Moe had probable cause to arrest Lopez for driving without a license.  But no reason appears to think evidence of that crime would be found in the car.  (*Gant, supra*, 556 U.S. at p. 343 ["In many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence"].)  A license is not something police need to search for as evidence of driving without a license; at most, it might provide a *defense* to the charge.  (*State v. Scheer, supra*, 781 P.2d at p. 860; see *State v. Conn* (2004) 278 Kan. 387, 392–394 [99 P.3d 1108, 1112–1113]; *State v. Lark* (App.Div. 1999) 319 N.J.Super. 618, 626–627 [726 A.2d 294, 298–299], affd. (2000) 163 N.J. 294 [748 A.2d 1103].)

No federal or state court has seen fit to adopt the rule; some have expressly rejected it. This, too, lends force to the argument for reevaluating whether such searches are permitted by the Fourth Amendment. (See *Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 298 [reconsidering precedent when the "the clear consensus of . . . out-of-state cases" suggests it falls well outside the mainstream].)

*Arturo D.* did rely on a handful of federal appellate decisions in support of its holding. (*Arturo D.*, *supra*, 27 Cal.4th at p. 76, fn. 16.) In particular, *Arturo D.* relied on a Ninth Circuit case, *United States v. Brown* (9th Cir. 1972) 470 F.2d 1120, 1122, and cases that preceded or relied on *Brown* (*Kendrick v. Nelson* (9th Cir. 1971) 448 F.2d 25, 27–28 and *U.S. v. $109,179 in U.S. Currency* (9th Cir. 2000) 228 F.3d 1080, 1088, fn. 47). But none of these cases involved license or identification searches, and so none supports the identification-search exception fashioned in *Arturo D.*[16] Nor has the situation changed since we decided *Arturo D.* A search of post-2002 federal cases reveals none that approve the license-search exception we adopted in *Arturo D.* What little authority there is supports the contrary rule. (See, e.g., *Crock v. City/Town* (W.D.Pa., Dec. 3, 2010, Civ. A. No. 2:09-426) 2010 U.S.Dist.

---

[16] Even as far as they go, these decisions have not been free from controversy. *Brown* has been described by a leading commentator as flatly "in error" when compared with the full body of Fourth Amendment law. (5 LaFave, Search and Seizure (5th ed. 2012) § 10.8(a), p. 401, fn. 33.) Rather, according to LaFave, "[s]earch of the car should be permitted only when the failure to produce the registration and the other relevant circumstances establish probable cause that the car is stolen." (*Ibid.*)

Lexis 136442, *18–*25 [failure to provide valid, current identification does not justify warrantless vehicle search]; *United States v. Osborne* (E.D.Tenn., May 25, 2007, No. 3:06-CR-110) 2007 U.S.Dist. Lexis 38558, *12, *17 [after suspect detained and handcuffed, unreasonable to search vehicle for evidence of identity instead of asking suspect his name in order to perform records check].)

A similar story emerges when examining the treatment of warrantless vehicle searches in our sister states. It appears no other state has seen fit to vest its police with the power to conduct warrantless searches for licenses or identification. As with federal cases, *Arturo D.* cited a handful of state court cases from elsewhere in support of its holding, but all involved searches for *vehicle registration*, not a license or identification. (See *Arturo D., supra*, 27 Cal.4th at p. 76, fn. 16.) A search through the reported decisions in other states has located none that approve a warrantless traffic-stop vehicle search, without consent or probable cause, for a driver's license or identification.

Perhaps particularly instructive in this vein is the experience of New Jersey—a state which, like California, has recognized an exception for warrantless vehicle searches to locate registration and proof of insurance documentation. (E.g., *State v. Keaton* (2015) 222 N.J. 438, 448–449 [119 A.3d 906]; see *State v. Bauder* (2007) 181 Vt. 392, 407, fn. 8 [924 A.2d 38, 51, fn. 8] [highlighting New Jersey and California as the two principal jurisdictions permitting warrantless vehicle searches for documents].) Indeed, New Jersey appears to be the first state to have carved out such an exception. (See *State v. Boykin* (1967) 50 N.J. 73, 77 [232 A.2d 141].) But, tellingly, New Jersey has not permitted the warrantless search of a vehicle, in the

absence of consent or probable cause, solely to locate a driver's license or identification.

In *State v. Lark*, *supra*, 726 A.2d 294, a driver stopped for driving without a front license plate asserted he had a license but was unable to provide it, and a computer search of the name he gave produced no matches. Even so, "the investigating police officer violated defendant's rights under the Fourth Amendment of the United States Constitution [and the state Constitution] when, following a motor vehicle stop for a minor traffic violation, he opened the door of defendant's vehicle to search for proof of defendant's identity without probable cause" to think contraband was located therein or other criminal activity ongoing. (*Lark*, at p. 296.) Although the intrusion was "minimal," no warrantless search for a license or proof of identity was permitted. (*Id.* at p. 297.) No recognized exception to the probable cause requirement supported the search, nor was the passenger compartment accessible to the driver after he had been removed and detained. The crime of driving without a license was complete; a search for a license or identification could not supply additional evidence of that crime. (*Id.* at pp. 298–299.)

The New Jersey Supreme Court unanimously affirmed, "substantially for the reasons expressed" in the intermediate court's opinion. (*State v. Lark* (2000) 163 N.J. 294, 296 [748 A.2d 1103, 1104].) The Supreme Court stressed the presence of alternatives that rendered a warrantless search unnecessary and thus unjustifiable: in response to a driver's failure to identify himself truthfully, an officer could detain the driver for further questioning and ultimately make a custodial arrest. (*Ibid.*) What the officer could not do, however, was search the

vehicle for identification absent some other existing exception to the warrant requirement. (*Ibid.*; see *State v. Carty* (App.Div. 2000) 332 N.J.Super. 200, 204 [753 A.2d 149, 151] [a "driver's inability to produce credentials . . . , without more, does not justify a search of the vehicle"].)

Last year, the New Jersey Supreme Court revisited its driving credentials exception. (See *State v. Terry* (N.J. 2018) 179 A.3d 378.) And while a sharply divided court reaffirmed the state's exception for proof-of-ownership searches, the majority distinguished *State v. Lark, supra*, 726 A.2d 294, as involving a different (and insufficient) rationale for a warrantless search. (*Terry*, at pp. 393–394; see *id.* at pp. 400–401 (dis. opn. of Rabner, C. J.) [arguing for three justices that *Lark*'s logic ought to foreclose a registration search as well].)[17]

Appellate courts in other states have agreed as well. (See, e.g., *Commonwealth v. Pacheco* (2001) 51 Mass.App.Ct. 736, 740–743 [need to establish suspect's identity does not justify warrantless vehicle search]; *id.* at p. 742 [to accept as sufficient the asserted "need for absolute certainty of the identification of the person arrested would be to sanction a principle having no apparent stopping place and could risk the possibility of a general exploratory search for evidence of criminal activity"]; *State v. Green* (1991) 103 N.C.App. 38, 41–45 [404 S.E.2d 363] [vehicle search for identification documents of driver stopped for weaving violates 4th Amend.]; *State v. Smith* (1986) 82 Or.App.

---

[17] Indeed, virtually the only point of agreement among all the justices was that the Fourth Amendment does not permit a warrantless vehicle search solely for identification.

636, 639–640 [729 P.2d 10] [warrantless vehicle search for identification unlawful].)

Casting the net slightly more broadly, we have identified limited authority allowing a warrantless search of a *person* solely for evidence of his or her identity. (*State v. Flynn* (1979) 92 Wis.2d 427, 441–448 [285 N.W.2d 710] [officer justified in removing and examining wallet of suspect who refuses to identify himself].) Other states, however, have not sanctioned similar searches. (*People v. Williams* (1975) 63 Mich.App. 398, 400–404 [234 N.W.2d 541] [officer can request identification, but seizure of wallet to examine suspect's driver's license violates 4th Amend.]; *State v. Varnado* (Minn. 1998) 582 N.W.2d 886 [warrantless frisk of driver after she failed to produce a license not within any exception to the warrant requirement]; *State v. Webber* (1997) 141 N.H. 817, 820 [694 A.2d 970] [refusing to create an " 'identification search' exception" to the warrant requirement under the state Constitution]; *State v. Scheer, supra*, 781 P.2d at p. 860 [search of driver who fails to present license in order to find license unlawful]; *Baldwin v. State* (Tex.Crim.App. 2009) 278 S.W.3d 367, 372 [during investigative detention, officer may ask for identification but may not "search a defendant's person to obtain or confirm his identity"]; *Jones v. Com.* (2010) 279 Va. 665, 672 [691 S.E.2d 801] [seizure of driver's wallet to examine for identification, even after the driver denies having any, violates 4th Amend.]; 4 LaFave, Search and Seizure, *supra*, § 9.6(g), p. 944 [expressing "considerable doubt" about Wisconsin's rule and noting the absence of other authority nationally that would support it]; see *id.* at pp. 943–945.) And the case-specific rationales the Wisconsin Supreme Court offered for approving such a search in *Flynn*—a burglary suspect stopped in

the wee hours who repeatedly refused to give his name and whom the officer had no other means of identifying—have limited relevance in the context of a garden-variety traffic stop.[18]

In sum, California remains in a distinct minority—indeed, a minority of one—when it comes to approving a warrantless vehicle search solely for personal identification. "Although holdings from other states are not controlling, and we remain free to steer a contrary course," this is a case in which "the near unanimity" of out-of-state authority "indicates we should question the advisability of continued allegiance to our minority approach." (*Moradi-Shalal v. Fireman's Fund Ins. Companies*, *supra*, 46 Cal.3d at p. 298.) This is particularly true given the nature of the issue before us. It is noteworthy that the vehicle search for a driver's license anywhere "such documentation reasonably may be expected to be found" (*Arturo D.*, *supra*, 27 Cal.4th at p. 65) is authority the police of this state did without for quite some time after the invention of the automobile. But it is especially telling that the police of all other states appear to do without that authority to this day, despite facing much the same need to identify traffic violators for purposes of issuing citations.

---

[18] The Court of Appeal decision in *People v. Loudermilk* (1987) 195 Cal.App.3d 996 also does not suggest general authority to search for identification. The court approved an officer examining a wallet found in a patdown for weapons, but only because the suspect first "lied to the officer and himself created the confusion as to his own identity" by falsely stating he had no identification. (*Id.* at p. 1004.) The court "emphasize[d] that we do *not* hold that a suspect may be detained and searched merely because he either refused to identify himself or refused to produce proof of identification." (*Ibid.*)

To reaffirm the exception now would leave California out of step not only with United States Supreme Court precedent, but also with every other jurisdiction in the nation.

## IV.

Reconsidering the scope of *Arturo D.* is not a task we undertake lightly. Adherence to precedent is always " 'the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.' " (*Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 879, quoting *Payne v. Tennessee* (1991) 501 U.S. 808, 827.) It is also " ' "usually the wise policy, because in most matters it is more important that the applicable rule of law be settled than it be settled right." ' " (*Johnson*, at p. 879, quoting *Payne*, at p. 827.)

But after considering both further guidance from the United States Supreme Court and the practices of every other state in the nation, we conclude the time has come to correct a misperception of the constraints of the Fourth Amendment in this context. We recognize that law enforcement agencies have crafted policies in reliance on *Arturo D.*, and our decision today will require them to adopt a different approach in scenarios like the one presented here. But inasmuch as subsequent legal developments have called the validity of the traffic-stop identification-search exception into question, the change in approach is warranted.

On this point, too, *Gant* is instructive. In reaching its conclusion, *Gant* pointed to the "checkered history" of the law in the area of searches incident to arrest—the multiple shifts in

direction the court's doctrine had undergone over the last 80 years. (*Gant, supra,* 556 U.S. at p. 350.) Indeed, *Gant* itself represented a substantial shift in the prevailing understanding of the *Belton* rule, and the high court acknowledged the decision would require substantial revisions to police practice. But *Gant* held this was an insufficient reason to avoid reexamining a rule that had proved, over time, to result in "routine constitutional violations." (*Gant,* at p. 351.) Here, too, it must be acknowledged that the field of vehicle searches is one that has been the subject of considerable retilling over the years. Given this history, reliance interests have less force. And here, too, we conclude that the reliance interests at stake cannot justify continuation of a practice that results in recurring and unwarranted invasions of individual privacy. (See *id.* at pp. 350–351.)[19]

For these reasons, we now hold the Fourth Amendment does not contain an exception to the warrant requirement for searches to locate a driver's identification following a traffic

---

[19] The dissent urges that "[s]tare decisis alone should cause the court to" adhere to a precedent at odds with United States Supreme Court guidance and that finds no support anywhere else in the nation. (Dis. opn. *post,* at p. 1.) "But the policy [of stare decisis] is just that—a policy—and it admits of exceptions in rare and appropriate cases," including in the face of a " 'tide of critical or contrary authority from other jurisdictions.' " (*Samara v. Matar* (2018) 5 Cal.5th 322, 336; see *In re Jaime P.* (2006) 40 Cal.4th 128, 133 ["reexamination of precedent may become necessary when subsequent developments indicate an earlier decision was unsound, or has become ripe for reconsideration"].) For reasons already explained, this is the rare case in which we consider it not only appropriate, but important, to correct an apparent misconception of the constraints imposed by the Fourth Amendment in this context.

stop. To the extent it created such an exception, *In re Arturo D.*, *supra*, 27 Cal.4th 60, is overruled and should no longer be followed.

## V.

Although the warrantless search of Lopez's vehicle violated the Fourth Amendment, the Attorney General argues the trial court should nevertheless have denied Lopez's motion to suppress the fruits of the search because the officer acted in good faith based on the existing state of the law. (See, e.g., *People v. Macabeo, supra*, 1 Cal.5th at p. 1220.) Lopez, in turn, contends that the People have forfeited any such argument. Because the Court of Appeal did not have occasion to consider the issue, we express no views on it.

The judgment of the Court of Appeal is reversed, and this case is remanded for further proceedings not inconsistent with this opinion.

**KRUGER, J.**


**We Concur:**

**LIU, J.**
**CUÉLLAR, J.**
**GROBAN, J.**

PEOPLE v. LOPEZ

S238627


Dissenting Opinion by Justice Chin


The majority today overrules our decision in *In re Arturo D.* (2002) 27 Cal.4th 60 (*Arturo D.*), which applied the Fourth Amendment of the federal Constitution to uphold a limited vehicle search. The majority does so first by giving *Arturo D.* an unnecessarily expansive reading that makes the decision into an easy target and then by claiming that *Arturo D.* is inconsistent with the high court's intervening decision in *Arizona v. Gant* (2009) 556 U.S. 332 (*Gant*). But *Gant* is a case that addressed a different issue and that did not change the applicable constitutional standard in any way. In brief, the majority sets up a straw man and then knocks it down, relying on a decision that is not on point.

Stare decisis alone should cause the court to reaffirm *Arturo D.*, *supra*, 27 Cal.4th 60. "It is, of course, a fundamental jurisprudential policy that prior applicable precedent usually must be followed even though the case, if considered anew, might be decided differently by the current justices. This policy, known as the doctrine of stare decisis, 'is based on the assumption that certainty, predictability and stability in the law are the major objectives of the legal system; i.e., that parties should be able to regulate their conduct and enter into relationships with reasonable assurance of the governing rules of law.'" (*Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 296.) Thus, the failure of a court to adhere to its precedents undermines the court's credibility as a judicial

body. But even if we were writing on a blank slate, there are sound reasons supporting our holding in *Arturo D.*, reasons that should lead us to adopt the same rule today.

Therefore, I dissent.[1]

## I.

The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." (U.S. Const., 4th Amend.) The Amendment by its terms protects only against "*unreasonable* searches and seizures" (italics added), and its warrant requirement is therefore not absolute. (See *Brigham City v. Stuart* (2006) 547 U.S. 398, 403.) Instead, application of the prohibition against unreasonable searches requires a balancing of individual and governmental interests: "[T]here can be no ready test for determining reasonableness [under the Fourth Amendment] other than by balancing the need to search against the invasion which the search entails." (*Camara v. Municipal Court* (1967) 387 U.S. 523, 536–537; accord, *Riley v. California* (2014) 573 U.S. 373, 385–386; *Georgia v. Randolph* (2006) 547 U.S. 103, 114–115; *New York v. Class* (1986) 475 U.S. 106, 116; *New Jersey v. T. L. O.* (1985) 469 U.S. 325, 337;

---

[1] I would reaffirm our core holding in *Arturo D.*, *supra*, 27 Cal.4th 60. I note in passing, however, that a footnote in *Arturo D.* suggests an alternative basis for upholding the search at issue in this case. (*Id.* at p. 87, fn. 28.)

*Michigan v. Long* (1983) 463 U.S. 1032, 1046; *Terry v. Ohio* (1968) 392 U.S. 1, 21.)

Consistent with that balancing approach, the high court has recognized many situations in which an entry and/or search without a warrant is reasonable and does not violate the Fourth Amendment. (See, e.g., *Kentucky v. King* (2011) 563 U.S. 452 [entry and search to prevent imminent destruction of evidence]; *Gant, supra,* 556 U.S. 332 [search of areas of vehicle accessible to recent occupant who has been arrested; holding of *Belton, infra,* narrowed]; *Brigham City v. Stuart, supra,* 547 U.S. 398 [entry based on rendering emergency aid or protection]; *Colorado v. Bertine* (1987) 479 U.S. 367 [inventory search of impounded vehicle]; *United States v. Ross* (1982) 456 U.S. 798 [search of containers within vehicle with probable cause to believe vehicle contains evidence of crime]; *New York v. Belton* (1981) 453 U.S. 454 (*Belton*) [search of passenger compartment of vehicle incident to arrest of occupant]; *United States v. Santana* (1976) 427 U.S. 38 [entry in hot pursuit of fleeing suspect]; *United States v. Robinson* (1973) 414 U.S. 218 [search incident to arrest]; *Cady v. Dombrowski* (1973) 413 U.S. 433 [vehicle search while officers are performing community caretaking functions unrelated to criminal investigation]; *Chimel v. California* (1969) 395 U.S. 752 [search incident to arrest; rule narrowed to area immediately accessible to arrestee]; *Terry v. Ohio* (1968) 392 U.S. 1 [frisk search based on reasonable suspicion of criminal act and reasonable belief person might be armed]; *Carroll v. United States* (1925) 267 U.S. 132 [search of vehicle with probable cause to believe vehicle contains evidence of crime].) The high court has also made clear that a person has a lesser expectation of privacy in a vehicle

than in a residence, although the privacy rights in a vehicle are not insubstantial. (*Gant*, *supra*, 556 U.S. at p. 345; *Knowles v. Iowa* (1998) 525 U.S. 113, 117 (*Knowles*); *New York v. Class*, *supra*, 475 U.S. at pp. 112–113; *Caldwell v. Lewis* (1974) 417 U.S. 583, 590–591; *Cady v. Dombrowski*, *supra*, 413 U.S. at pp. 441–442.) In *Arturo D.*, *supra*, 27 Cal.4th 60, a case involving a limited search of a vehicle, this court recognized one more situation in which it is reasonable for law enforcement officers to proceed without first obtaining a warrant.

## II.

Case law throughout the country establishes that a driver who is being pulled over for a traffic violation and who hopes to conceal his or her identity (and thus evade responsibility for the violation) will sometimes, while slowing to a halt, hide a wallet under the seat or elsewhere in the vehicle and then give law enforcement officers a false name.[2] Because this method of

---

[2] We cited numerous such cases in *Arturo D.*, *supra*, at pages 80 to 81. (See, e.g., *Mallett v. Bowersox* (8th Cir. 1998) 160 F.3d 456, 457 ["Before Trooper Froemsdorf approached the vehicle, [driver Jerome] Mallett hid his wallet and identification under the front seat. When Trooper Froemsdorf arrived at the side of the vehicle and requested Mallett's driver's license, Mallett replied that he did not have his license with him and falsely claimed to be Anthony Mallett, who is actually petitioner Jerome Mallett's brother."]; *State v. Mitzlaff* (Wn. 1995) 907 P.2d 328, 329 ["[After a traffic stop,] Deputy Heinze contacted the driver of the pickup truck, Jerry Mitzlaff, who at first provided false identification. . . . After Mitzlaff failed field sobriety tests, Heinze arrested him for driving under the influence. [¶] . . . [¶] Under the driver's seat, Heinze found a . . . wallet containing Mitzlaff's true identification."].) Indeed,

we could have cited many more. (See, e.g., *Chest v. State* (Ind.Ct.App. 2009) 922 N.E.2d 621, 622–623 ["[After a traffic stop,] Officer Reynolds . . . asked [Marcus] Chest for his driver's license and registration. Chest replied he had forgotten his license at home. . . . [¶] . . . Officer Reynolds then handcuffed Chest and secured him in the back seat of the police car. . . . At the trial, Officer Reynolds testified that in his experience, suspects who refuse to provide identification have often hidden their driver's license '. . . somewhere in the vehicle.' . . . Officer Reynolds looked under the seat and discovered Chest's wallet, including his driver's license."]; *People v. Washington* (Aug. 7, 2007, F049975) [nonpub. opn.] ["[After a traffic stop,] [a]ppellant handed Sergeant Marmolejo a driver's license bearing the name of Glenn Bernard Washington. However, the photograph on the license did not resemble appellant. . . . [¶] Officers arrested appellant for possession of a fraudulent driver's license. . . . [¶] Police searched the Jeep and found a wallet with appellant's identification under the driver's seat."]; *State v. Lee* (Tenn.Crim.App. Jan. 9, 2004, No. M2003-01077-CCA-R3-CD) 2004 WL 49108, p. *1 ["The defendant, who was driving, told Deputy Terns that he did not have a driver's license and gave Terns a false name. Upon conducting a search, Deputy Terns found a wallet under the driver's seat containing what appeared to be a Department of Safety receipt with the defendant's name on it."]; *State v. Vandergriff* (Wn.Ct.App. June 1, 1999, No. 16619-8-III) 1999 WL 360568, p. *1 ["The deputy requested a driver's license, registration and proof of insurance. Mr. Vandergriff responded that he had none of those documents. When asked his name, Mr. Vandergriff then gave his brother's name . . . . [¶] The deputy then placed Mr. Vandergriff under arrest for driving without a valid driver's license. . . . The deputy then . . . searched the car. He discovered a wallet under the driver's seat containing identification for Mr. Vandergriff."]; *U.S. v. Milton* (6th Cir. Mar. 10, 1995, Nos. 93-1812 & 93-1876) 1995 WL 106131, p. *1 ["After stopping the vehicle, Sergeant Sitar asked the driver of the car for his license. The driver refused, and identified himself as Derek Johnson. Other

5

evading responsibility for a traffic violation poses such a persistent problem, it is to that extent reasonable for law enforcement officers to take measured steps to ensure that our traffic laws are duly enforced. Therefore, our decision in *Arturo D., supra*, 27 Cal.4th 60, recognized a narrow exception to the Fourth Amendment's warrant requirement. If a law enforcement officer pulls over a vehicle for a traffic violation and the driver, when asked, is unable to produce identification documents,[3] despite state law requiring drivers to carry such documentation (see Veh. Code, §§ 12500, 12951), or if the driver produces documents that appear to be false or to belong to

_____

passengers in the vehicle, however, identified the driver as Day Day or Ade Milton, as did occupants of the house at which the car had stopped. A wallet found under the driver's seat contained Milton's identification."]; *State v. Gordon* (Or.Ct.App. 1991) 821 P.2d 442, 442–443 ["[After a traffic stop, Officer] Olson . . . asked for identification, and defendant produced from a wallet six pieces of identification for a 'Clark Blakely.' Olson asked if he was Clark Blakley. Defendant said that he was not and that his name was Kirk Gordon. Olson then asked him for some identification to prove that he was Kirk Gordon. Defendant looked into his wallet, but could not find any identification. . . . [¶] Olson testified that . . . it was his experience that persons trying to hide their identity will often put their wallets underneath the seat."].) Several of these decisions are not published in the official reports of the states in which they were decided, but we may nonetheless take judicial notice of their fact statements without contravening California Rules of Court, rule 8.1115. (See *People v. Hill* (1998) 17 Cal.4th 800, 847, fn. 9.)

[3] *Arturo D., supra*, 27 Cal.4th 60, also authorized a limited search for vehicle registration documentation. That aspect of the decision is not at issue here.

different person, then a limited search of places in the vehicle where the driver may have hidden a wallet while slowing to a halt is reasonable. That was correct when we decided *Arturo D.*, and it is correct today.

If, after being pulled over for a traffic violation, a driver gives a false name and declines to provide adequate proof of identity, what options does an officer have? If the officer writes a traffic citation using the false name that the driver has provided and then allows the driver to go, the driver has successfully gamed the system, because the citation will eventually be dismissed. Of course, the officer can question the driver for details about his or her identity and check those details against state records that are available to the officer, but that approach might not adequately identify the driver, particularly if—as uncooperative drivers frequently do—the driver gives the name of a brother or sister.[4] The officer can also ask the driver to consent to a search, but the driver, who may have just hidden or refused to provide identification documents, will be unlikely to grant such consent. So, what more practical options does the officer have?

First, the officer can require the driver to place a thumbprint on the notice to appear, and the officer can accept

---

[4] In some cases, the officer's questioning of the driver about his or her identity may demonstrate that the driver has lied to the officer in violation of Vehicle Code section 31 (giving false information to a peace officer), Penal Code section 148.9 (giving false identity to a peace officer), and perhaps in violation of Penal Code section 530.5 (false personation). The officer may then arrest the driver and search the vehicle for evidence of those violations, including evidence of correct identity. (*Gant, supra,* 556 U.S. at pp. 343–344.)

that thumbprint as "satisfactory evidence" of identity. (Veh. Code, §§ 40302, subd. (a), 40500, subd. (a); see § 40504.) The thumbprint can later be used to track down the driver and hold him or her accountable for the traffic violation. The problem, however, with the thumbprint solution is that the driver might refuse to give it. (See Pen. Code, § 853.5, subd. (a) ["Only if the arrestee refuses to sign a written promise, has no satisfactory identification, or refuses to provide a thumbprint or fingerprint may the arrestee be taken into custody."].) Moreover, even if the driver agrees to give a thumbprint, the thumbprint is not necessarily a satisfactory substitute for documentary identification. For example, a matching thumbprint might not be found in the database of the Department of Motor Vehicles.[5]

Second, the officer can make a custodial arrest of the driver for failure to carry a driver's license. (Veh. Code, §§

_____

[5] It might be supposed that with advances in technology, the officer can use face recognition software to identify the driver, assuming the Department of Motor Vehicles has access to a database containing an image of the driver's face along with accurate identifying information. But a driver is not obligated to expose his or her face to the officer. It might happen, for example, that a driver refuses to remove a motorcycle helmet that has a tinted visor or that a driver is wearing niqab for religious reasons. Moreover, there is at present no statutory authorization for the use of face recognition software to identify drivers who have committed traffic violations, and the possible constitutional questions that such a methodology would raise remain unresolved. (Cf. *People v. Gray* (2014) 58 Cal.4th 901, 905 [defendant stipulated that the photographic evidence recorded by a red light camera proved that he was the driver of the car that allegedly failed to stop at the red traffic signal; the use of face recognition software was not at issue].)

12500, 12951, 40302; *People v. McKay* (2002) 27 Cal.4th 601, 618, 625.) The officer can then search the person of the driver incident to that arrest. (*United States v. Robinson*, *supra*, 414 U.S. 218.) Moreover, if the vehicle is illegally parked and no passenger in the vehicle is authorized to drive the vehicle, the officer can impound the vehicle and conduct a comprehensive inventory search. (*Colorado v. Bertine*, *supra*, 479 U.S. 367.) Thus, by arresting the driver, the officer can (in many cases) search both the driver and the vehicle. Of course, if the driver has hidden identification documents, that search will likely result in their discovery.[6]

The second of these options would entail significant burden, and the officer might not choose to pursue it, but if the driver refuses to give an adequate thumbprint, the officer has it as an alternative.

In light of the foregoing, our decision in *Arturo D.* recognized a narrow exception to the Fourth Amendment's warrant requirement, giving officers a third, considerably less intrusive option as compared to the option of custodial arrest. When an officer detains a driver for a traffic violation, and the driver declines to provide identification documents, the officer does not contravene Fourth Amendment protections by conducting a limited search of places in the vehicle where such

---

[6] In this case, defendant's vehicle was *not* illegally parked, and therefore an arrest of defendant for driving without a driver's license would not have permitted the officers to impound the vehicle. But the majority addresses the general validity of *Arturo D.* It does not limit its holding to cases like this one in which the vehicle is legally parked at the time of the search.

documentation reasonably may be expected to be found. (*Arturo D.*, *supra*, 27 Cal.4th at p. 78.) Contrary to the majority's view, an *Arturo D.* search is not "perilously close to the 'full-scale search for contraband' we acknowledged was expressly prohibited by *Knowles*, *supra*, 525 U.S. 113." (Maj. opn., *ante*, p. 21.) Actually, we cabined the search in several important ways. The search may not be pretextual (*Arturo D.*, at pp. 78, 86), which means of course that it must be limited to searching for identification documents and that it must terminate when those documents are found. We also said that "the prospective reach of a driver in relation to the location searched is a factor that can be considered in evaluating the reasonableness of the search." (*Id.* at p. 82.) In addition, our strongly emphasized concern about drivers who put or toss a wallet under the front seat in an effort to conceal identity (see *id.*, at pp. 79–82) served to narrowly circumscribe the scope of the search we were authorizing. We clearly had in mind places that a driver might easily access during the moments while he or she, having been signaled by an officer to stop, is slowing to a halt,[7] and even then we said that we were not "condon[ing]

---

[7]    The majority asserts that the rule we adopted in *Arturo D.* was not limited to places that a driver might easily access while slowing to a halt. Instead, the majority argues that our holding was broader, allowing officers to search any places in the vehicle where identification documents " 'reasonably may be expected to be found.' " (See maj. opn., *ante*, p. 7, quoting *Arturo D.*, *supra*, 27 Cal.4th at p. 78.) But any statement of a holding is necessarily summary in nature, and it must be construed in light of the opinion's facts and reasoning. Indeed, that is exactly what the high court did in *Gant*, when it construed *Belton*'s holding narrowly, relying on *Belton*'s facts and reasoning. (See

searches for required documentation of 'virtually all areas in the physical proximity of the driver.' " (*Id.* at p. 84.) We noted, for example, that "an officer may not search in containers or locations in which such documents are not reasonably expected to be found," and we gave as illustrations of that limitation a "crumpled fast-food bag under [the] seat" and an "enclosed 'rear interior compartment.' " (*Id.* at p. 86, fn. omitted.) Finally, we "emphasize[d]" that we were not "condon[ing] the equivalent of the full-scale search for contraband prohibited by the high court in *Knowles, supra*, 525 U.S. 113." (*Arturo D.*, at p. 86.) In short, a search under *Arturo D.* is limited in both scope and objective, and it must terminate as soon as the officer has located identification.

The facts of this case aptly illustrate the effective and limited application of *Arturo D.*'s rule. Defendant's car was searched only after she admitted that she did not have a driver's license but that " 'there might be identification in the vehicle.' " Having been so advised, the officers were entitled to protect their own safety by retrieving the identification themselves rather than permitting defendant to do so. (*Arturo D., supra*, 27 Cal.4th at p. 87, fn. 28.) One of the officers noticed an object on the front passenger seat that looked like a purse, and he seized it. The other officer opened the purse, "[l]ooking for . . . identification," which he found. The officer discovered the

---

*Gant, supra*, 556 U.S. at pp. 339–341, 343–344.) In *Arturo D.*, we emphasized the problem of drivers who conceal identification documents from police after being signaled to stop (see *id.* at pp. 79–82), and our holding should be construed accordingly. Instead, the majority reads *Arturo D.* unnecessarily broadly, thus making it an easier target for criticism.

methamphetamine while searching for the identification documents, and no broader search of the purse or car occurred.

If law enforcement officers have applied our decision in *Arturo D.*, *supra*, 27 Cal.4th 60, more broadly than its facts and reasoning warrant (see maj. opn., *ante*, pp. 20–21), then it is the task of reviewing courts to apply the decision correctly and invalidate those searches, but we need not construe *Arturo D.* to be something it is not and then reject it on that ground. An officer conducting a search for identification documents in accordance with *Arturo D.* may only examine places in the vehicle where a driver, slowing to a halt, might quickly put or toss a wallet or similar container. The officer may not open any closed containers other than those, such as a wallet, that typically contain identification documents, and because the search may not be pretextual, the officer may only examine the contents of a wallet (or comparable container) to the extent necessary to determine the driver's identity. There are relatively few places where a driver can hide a wallet while pulling to the side of the road during a traffic stop, and therefore the search we approved in *Arturo D.* is narrowly circumscribed. That limited search reflects an appropriate balancing of the relevant interests, and it is consistent with present-day views of the Fourth Amendment.

Of course, the officer also has the option of making a custodial arrest and then searching the person of the driver and, depending on the circumstances, searching the vehicle, too.[8]

---

[8]     The high court in *Knowles* expressly discussed the possibility of a driver concealing identification documents (i.e.,

But a search of the driver's person incident to a custodial arrest of the driver is certainly more intrusive than the limited search of the driver's vehicle that we approved in *Arturo D.* (see, e.g., *Wyoming v. Houghton* (1999) 526 U.S. 295, 303), and a comprehensive inventory search of a vehicle (in a case in which the vehicle must be impounded after the driver's arrest) is also more intrusive than the *Arturo D.* search. Therefore, far from encroaching on the privacy interests of drivers, the holding of *Arturo D., supra,* 27 Cal.4th 60, serves to *protect* those privacy interests while still allowing officers to achieve the important purpose of adequately identifying the driver before issuing a citation. If the Fourth Amendment permits the greater intrusion of a custodial arrest and a full search of the person (and perhaps the vehicle), then it should also permit the lesser intrusion of no arrest and a limited search of just a few places within the vehicle.[9]

---

the problem we addressed in *Arturo D., supra,* 27 Cal.4th 60), and the court proposed custodial arrest of the driver as one way of addressing that problem. (*Knowles, supra,* 525 U.S. at p. 118.) But the court did not state that, in such circumstances, a very limited search of the vehicle for a hidden wallet was unconstitutional. At issue in *Knowles* was a "full-blown" search incident to a citation that had already been issued (*id*. at p. 115), not a limited search for identification to *facilitate* the issuance of a citation. On that ground, our opinion in *Arturo D.* reasonably distinguished *Knowles.* (*Arturo D.*, at p. 76.)

[9] The majority rejects this reasoning, but it focuses its attention solely on the search *of the vehicle* (which would not necessarily result from an arrest of the driver) and ignores the inherently more intrusive search of the driver's person (which would almost certainly result from an arrest of the driver). (See

As noted, the Fourth Amendment requires courts to weigh the relevant individual and governmental interests. (See, e.g., *Camara v. Municipal Court*, *supra*, 387 U.S. at pp. 536–537.) In the circumstances presented in *Arturo D.*, "the need to search" (*Camara v. Municipal Court*, at p. 537) is great. The officer needs to identify the driver to ensure that the driver is held accountable. Indeed, if law enforcement officers are prevented from issuing enforceable citations, then the traffic laws can be flouted with impunity, risking the lives of innocent people who use the public thoroughfares. By contrast, "the invasion which the search entails" (*id*. at p. 537) is relatively minor, especially when compared to the alternative that would follow from a custodial arrest.[10] The very limited search we approved in

_____

maj. opn., *ante*, p. 29, fn. 12.) There can be no doubt that an arrest, followed by a search of one's person and booking at a local police station, is more intrusive than having a police officer look under the front seats of one's car (and in similar places) for a concealed wallet or purse. At oral argument, the Attorney General made the same point. When asked what the biggest danger would be if the court accepted defendant's argument, the Attorney General said: "[That] more persons who are guilty of mere infractions will be arrested and that the increased intrusions associated with arrest — embarrassing possible future admissions, being put in a cell with strangers accused of crime — will increase." Among those "increased intrusions," the Attorney General might also have mentioned a full search of the driver's person and, depending on the circumstances, a full search of the vehicle (instead of the limited search that *Arturo D.* approved).

[10]     The majority opinion criticizes our opinion in *Arturo D.* for not adequately discussing the magnitude of the intrusion on privacy that was at issue. (Maj. opn., *ante*, pp. 18–19.) The issue before us is not whether, with the aid of hindsight, *Arturo D.* is

*Arturo D.*, *supra*, 27 Cal.4th 60, involves some trespass upon a person's privacy—it permits the search of areas within a vehicle that are accessible to a driver who might be hiding identification documents while slowing to a halt—but the search we approved does not "giv[e] police officers unbridled discretion to rummage at will among a person's private effects." (*Gant*, *supra*, 556 U.S. at p. 345.) Thus, it does not match the comprehensive vehicle search approved in *Belton*, *supra*, 453 U.S. 454, and disapproved in *Gant*. The *Arturo D.* search is reasonable in that it is narrowly constrained, and it allows the officer to find the appropriate identification documents, confirm the driver's identity, issue any appropriate citations, and release the driver without a custodial arrest and the more intrusive search that would ensue therefrom.

III.

Even though our decision in *Arturo D.*, *supra*, 27 Cal.4th 60, is consistent with the high court's intervening decision in *Gant*, *supra*, 556 U.S. 332, the majority asserts that *Gant* casts doubt on *Arturo D.*, justifying our reconsideration of that decision. (Maj. opn., *ante*, at pp. 16–33.) It does not. *Gant* is simply not on point.

*Gant* addressed the search-incident-to-arrest exception to the warrant requirement. In *Belton*, *supra*, 453 U.S. 454, the high court had upheld a search of the passenger compartment of a vehicle incident to the arrest of the vehicle's recent occupant. (*Id*. at p. 460.) *Gant* read *Belton* narrowly, limiting *Belton*'s holding to situations in which "the arrestee is within

_____

written in the manner the majority would prefer. Rather, the issue is whether it is correct.

reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." (*Gant, supra*, 556 U.S. at p. 351.) The court said that a broader reading of *Belton* "would . . . untether the rule from the justifications underlying the . . . exception" (*Gant*, at p. 343), which the court identified as officer safety and the preservation of evidence (*id*. at pp. 338–339).

Our decision in *Arturo D*. did not rely on *Belton, supra*, 453 U.S. 454, or on the rationale of a search incident to an arrest. In fact, *Arturo D*. only cited *Belton* once, in passing, in the context of describing the basis of the lower court's decision in *Knowles, supra*, 525 U.S. 113. Thus, the high court's narrow reading of *Belton* in *Gant, supra*, 556 U.S. at page 351, had no effect on *Arturo D*. Rather, *Arturo D*. recognized a different exception to the Fourth Amendment's warrant requirement, applying the balancing test that traditionally governs constitutional review of warrantless searches. (*Arturo D., supra*, 27 Cal.4th at pp. 83–84.) As noted, the *Arturo D*. exception is reasonable in light of the frequency with which drivers hide identification documents, the strong need to enforce traffic laws and thus maintain road safety, and the narrowly circumscribed nature of the search that we approved, which avoided the necessity of arresting the driver and conducting a more intrusive search.

In *Gant, supra*, 556 U.S. 332, the high court did not repudiate the balancing test that we applied in *Arturo D., supra*, 27 Cal.4th at pages 83 to 84. On the contrary, it applied the balancing test. (*Gant*, at pp. 344–347.) *Gant* made only two points that might possibly be relevant to the question of *Arturo D*.'s continuing validity. First, *Gant* noted that the courts sometimes undervalue the privacy interests that a person

has in a vehicle. (*Gant*, at pp. 344–345.) In this regard, the high court noted in particular the undesirable possibility of police searching "every purse, briefcase, or other container" in the vehicle's passenger compartment. (*Id*. at p. 345.) The court was "concern[ed] about giving police officers unbridled discretion to rummage at will among a person's private effects." (*Ibid*.) Second, *Gant* reiterated the unremarkable rule that any exception to the warrant requirement must be tethered to the justifications that support it. (*Id*. at p. 343.)

As to the concern about "undervalu[ing]" privacy interests at issue in vehicular searches and the risk of "unbridled . . . rummag[ing]" through "every purse, briefcase, or other container" (*Gant*, *supra*, 556 U.S. at pp. 344–345), our decision in *Arturo D.* did not take lightly the privacy concerns that the dissenting justices in that case emphasized, and the search *Arturo D.* approved does not come close to an "unbridled . . . rummag[ing]" every time a driver declines to provide proof of identification. On the contrary, we expressly disapproved the search of any container the officer might find. (*Arturo D.*, *supra*, 27 Cal.4th at p. 86.) It is true that an *Arturo D.* search might involve the opening and search of a closed wallet or purse, but the wallet or purse would have to be found in a place where the driver might have put or tossed it while slowing to a halt, and the officer would only be permitted to examine its contents to the extent necessary to locate identifying documents. *Arturo D.* expressly rejected the assertion that officers could rummage about at will. (*Ibid*.)

Regarding *Gant*'s rule that an exception to the warrant requirement must be tethered to the justifications that support it (*Gant*, *supra*, 556 U.S. at p. 343), this rule is nothing new, and

therefore it does not justify reconsideration of *Arturo D., supra*, 27 Cal.4th 60. In fact, the rationale of the high court's decision in *Knowles*—a case we discussed at length in *Arturo D.* (*id.* at pp. 74–76)—was that the justifications that supported an exception to the warrant requirement for a search incident to an arrest do not support an exception for a search incident to the issuance of a citation. (*Knowles, supra*, 525 U.S. at pp. 116–118.) Asserting that an exception must be tethered to the justifications that support it is merely another way of saying that the exception must be reasonable (reasonable both as a general matter and in the specific manner of its application). Putting the question in terms of the balancing of individual and governmental interests, one could say that *Gant* merely made the obvious point that the government has no interest in an exception to the warrant requirement that is not tethered in some way to the justifications offered in its defense. (*Gant*, at p. 347.) But the exception we recognized in *Arturo D.* is very much tethered to the justifications that support it. The search that we authorized in *Arturo D.* is a limited one that encroaches only a relatively small amount on privacy interests, and it is closely tethered to the governmental interest in identifying the offending driver in the least intrusive way, so the driver can be held accountable for his or her traffic violation and the safety of the public thoroughfares can be preserved.

In summary, *Gant* addressed a different issue than the issue we addressed in *Arturo D.*, and it changed nothing as regards the relevant standards that apply under the Fourth

Amendment. Nonetheless, the majority uses it as a basis for ignoring stare decisis.[11]

I respectfully dissent.

**CHIN, J.**

**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**CORRIGAN, J.**

---

[11] The majority also relies on the assertion that other states have not adopted the exception to the warrant requirement that we recognized in *Arturo D., supra,* 27 Cal.4th 60. (See maj. opn., *ante,* pp. 33–40.) Considering that *Gant'*s significant narrowing of *Belton, supra,* 453 U.S. 454, is only a decade old, it is probably too early to tell if states will follow *Arturo D.* now that unbridled vehicle searches incident to an arrest of an occupant cannot be upheld. (See *Gant, supra,* 556 U.S. at p. 351.) But even if the majority is correct that *Arturo D.* stands alone, we need not overrule it on that account. Rather, if there is a split of authority, then it is appropriate for the high court to grant a writ of certiorari and resolve the question.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Lopez
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 4 Cal.App.5th 815
**Rehearing Granted**


_____

**Opinion No.** S238627
**Date Filed:** November 25, 2019
_____

**Court:** Superior
**County:** Yolo
**Judge:** Samuel T. McAdam


_____

**Counsel:**

Kamala D. Harris and Xavier Becerra, Attorneys General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Joshua A. Klein, Deputy State Solicitor General, Catherine Chatman, Rachelle A. Newcomb, R. Todd Marshall and Larenda R. Delaini, Deputy Attorneys General, for Plaintiff and Appellant.

Solomon Wollack, under appointment by the Supreme Court, for Defendant and Respondent.

Emily A. Rehm, Michael M. Epstein and Rachel E. Vanlandingham as Amici Curiae on behalf of Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

R. Todd Marshall
Deputy Attorney General
Office of the Attorney General
1300 I Street
Sacramento, CA 95814
(916) 210-7747

Solomon Wollack
P.O. Box 23933
Pleasant Hill, CA 94523
(925) 671-2501