Filed 12/27/23  P. v. Smith CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>TYREE TAMARIE SMITH,<br><br>        Defendant and Appellant. | B327495<br><br>(Los Angeles County<br>Super. Ct. No. MA083136) |

        APPEAL from a judgment of the Superior Court of Los Angeles County, Emily J. Cole, Judge.  Affirmed.

        Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

        Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri and Nikhil Cooper, Deputy Attorneys General, for Plaintiff and Respondent.

_____

After sheriff's deputies stopped appellant Tyree Tamarie Smith for traffic offenses, a deputy saw the handle of a firearm protruding from under the front passenger seat. Smith was arrested. He moved to suppress evidence, arguing that the search violated his Fourth Amendment rights. (Pen. Code, § 1538.5.)[1]

We conclude that there was probable cause to search. A deputy first saw a grocery bag of marijuana on the back seat, then a firearm on the floorboard. These "plain view" sightings furnished probable cause to believe the car contained evidence of a crime, justifying a complete search of every compartment. We affirm the order denying Smith's motion to suppress evidence.

## FACTS

Around midnight on April 26, 2022, Los Angeles County Deputy Sheriff Joshua Friedman was on patrol with a partner in Palmdale when he saw a car traveling with very dark tinted windows and no front license plate, two Vehicle Code violations. The driver turned without signaling, another offense.

Friedman pulled the car over and ordered that the windows be lowered because the tint prevented the deputies from seeing inside. He smelled a strong odor of burned marijuana from 15 to 20 feet away and saw a large marijuana-filled grocery bag on the back seat, marijuana in multiple sandwich bags, and unused sandwich bags. On the driver's side floor was a glass jar with marijuana. In body camera footage, Friedman's partner asks, "How much marijuana do you have in the car? It reeks."

Friedman asked Smith, the driver, for identification. Saying he was nervous, Smith produced an EBT card. Friedman

---

[1] Undesignated statutory references are to the Penal Code.

instructed Smith to get out of the car. When the door opened, Friedman saw Smith's license and a firearm laser sight in the driver's cupholder. Patting Smith down for weapons, Friedman found a "large wad of cash" totaling $940 in his front pocket. He detained Smith for a narcotics investigation and placed him in the patrol car.

Smith's passenger, Tamon Bell, began to struggle with Friedman's partner. As Friedman ran to help, Bell broke free and fled. Friedman debated whether to give chase but decided not to do so because he had already detained Smith.

Friedman looked into the front passenger area of Smith's car through the open door. From the curb, he saw the butt of a firearm sticking out from under the passenger seat. He radioed his partner that the person he was chasing could be armed. Friedman checked the firearm, which was a loaded "ghost gun" with no serial number. Friedman then searched the car and found a scale, a laser attachment for a firearm, and marijuana. He found no burned remnants of marijuana and did not perform sobriety tests.

## PROCEDURAL HISTORY

Smith was charged with (1) possession of a firearm by a felon (§ 29800, subd. (a)(1)); (2) possession of a concealed firearm in a vehicle (§ 25400, subd. (a)(1)); (3) carrying a loaded firearm in a vehicle (§ 25850, subd. (a)); and (4) unlawful possession of ammunition (§ 30305, subd. (a)(1)). It was further alleged that he has a prior conviction. (§§ 667, 1170.12.) He pleaded not guilty.

Smith moved to suppress evidence. He challenged the admissibility of the firearm, ammunition, and laser attachment, arguing that the warrantless search of his vehicle violated his Fourth Amendment rights.

3

The trial court denied the motion.  It found that the initial stop was lawful due to Vehicle Code violations.  Smelling marijuana and seeing it in plain view was sufficient to detain Smith.  When the passenger fled, Friedman moved to the passenger side and saw the gun handle in plain view, furnishing probable cause to search the entire vehicle.

After the court denied his motion to suppress, Smith entered a plea bargain.  He pleaded no contest to count one.  The court suspended imposition of sentence, placed him on probation for two years with two days in jail, and imposed fines and fees.  He appeals.

## DISCUSSION

### 1.  Appeal and Review

Appeal is taken from the judgment following Smith's no contest plea after the trial court denied his motion to suppress.  "Review on appeal may be obtained by the defendant provided that at some stage of the proceedings prior to conviction he or she has moved for . . . the suppression of the evidence."  (§ 1538.5, subd. (m); Cal. Rules of Court, rule 8.304(b)(2)(A).)

" ' "The standard of appellate review of a trial court's ruling on a motion to suppress is well established.  We defer to the trial court's factual findings, express or implied, where supported by substantial evidence.  In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment." ' "  (*People v. Suff* (2014) 58 Cal.4th 1013, 1053.)

### 2.  Fourth Amendment Rule on Vehicle Searches

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures.  A warrant is generally required before police conduct a search.  (*People v.*

4

*Lopez* (2019) 8 Cal.5th 353, 359 (*Lopez*).) Automobiles are an exception to the general rule, owing to their mobility and their reduced expectation of privacy. (*California v. Carney* (1985) 471 U.S. 386, 390–392.) If police have probable cause to believe that a lawfully stopped vehicle contains evidence of criminal activity or contraband, they " 'may conduct a warrantless search of any area of the vehicle in which the evidence might be found.' " (*People v. Sims* (2021) 59 Cal.App.5th 943, 950–951.)

Appellant recognizes that police may search an automobile without a warrant. The question is whether there is (1) a reasonable suspicion the driver violated the law and (2) "probable cause to search [because] the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." (*Ornelas v. United States* (1996) 517 U.S. 690, 696, 699–700 [officers searched door panels and found cocaine after stopping a driver on suspicion of drug trafficking because his car had California license plates in Wisconsin, in winter].)

If probable cause exists, officers may " 'conduct a probing search of compartments and containers within the vehicle whose contents are not in plain view.' " (*People v. McGee* (2020) 53 Cal.App.5th 796, 801, quoting *United States v. Ross* (1982) 456 U.S. 798, 800.) This is true even if the traffic stop was for an infraction, not an arrestable offense. (*McGee,* at p. 805.*)*

### 3. The Search of Smith's Car Was Lawful

Smith does not contest that he was lawfully stopped for Vehicle Code violations, observing that traffic laws give officers " 'fifteen hundred reasons to pull you over.' " He argues only that Friedman lacked probable cause to search the vehicle. We conclude that there was probable cause to search.

## A. Search of Driver's Door

Smith contends that a search began before his passenger fled. He points to body camera images in which Friedman touched the inside of the driver's door. Seven seconds later, passenger Bell struggled with Friedman's partner and fled. Friedman looked into the front passenger area and saw a gun on the floorboard. Friedman's initial actions did not invalidate his later discovery of the gun.

When Friedman asked for a driver's license, Smith provided a debit card. As Smith opened the door and got out of the car, Friedman saw identification in a cup holder, along with a laser firearm attachment.[2] He placed Smith in the patrol car and went to confirm that it was Smith's license.

A driver must possess a license and present it when asked by police. (Veh. Code, §§ 12500, 12951.) There are limits on police searches for a license during a traffic stop. For example, in *Lopez, supra,* 8 Cal.5th 353, a driver in a traffic investigation denied having a license. An officer searching for identification found Lopez's purse on the passenger seat, opened it, and found methamphetamine. (*Id.* at p. 357.) Citing privacy concerns, our Supreme Court deemed the search of the purse unlawful. Police need not employ "the least intrusive means" of achieving objectives but must justify "a substantial intrusion on personal privacy" and not " 'rummage at will among a person's private effects' " for a traffic violation. (*Id.* at pp. 374–375.)

Unlike *Lopez, supra,* 8 Cal.5th 353, Friedman did not open a bag or rummage through private effects to find something hidden from view. He saw the license in a cupholder and

_____

[2] The video does not clearly show what, exactly, Friedman saw when he shined a flashlight into the car.

examined it to ascertain the driver's identity without intruding on Smith's privacy.  "Plain view" rules apply here.  (*Harris v. United States* (1968) 390 U.S. 234, 236 [officers could seize a robbery victim's registration card "plainly visible" through the open door of defendant's car].)

### B.  Marijuana Odor Alone Did Not Precipitate a Search

Smith cites Proposition 64, which allows possession of up to 28.5 grams (one ounce) of cannabis.  (Health & Saf. Code, § 11362.1.)  Because marijuana possession is lawful, Smith reasons, deputies had no right to search his car merely because they smelled it.  (*People v. Johnson* (2020) 50 Cal.App.5th 620, 634 [odor of marijuana alone is not an inference that a car contains contraband].)  It is, however, illegal to smoke cannabis while driving.  (Health & Saf. Code, § 11362.3, subd. (a)(7).)

Here, there was more than the mere odor of marijuana.  As Friedman approached Smith's car, he smelled burned marijuana.  He saw a grocery bag of marijuana on the back seat, sandwich bags of marijuana, and marijuana in a jar at Smith's feet.  A reasonable officer could deduce that (1) Smith was smoking marijuana while driving, (2) the amount of marijuana in the car far exceeded the 28.5 grams allowed by law, and (3) the baggies of marijuana were intended for sale.  Moreover, Smith said he was nervous; Friedman found a wad of cash in his pocket during a weapons check; and Smith's passenger acted suspiciously by fighting a deputy and then fleeing.

The totality of the circumstances gave probable cause to search Smith's car.  (*People v. Moore* (2021) 64 Cal.App.5th 291, 299, 302 [odor of marijuana plus nervous, evasive behavior reasonably caused an officer to believe a vehicle contained more

marijuana than the law allows].)  Given the grocery bag of marijuana in plain view and the wad of cash in Smith's pocket, Friedman began a narcotics investigation, reasonably believing the car contained evidence of a crime, i.e., an unlawful quantity of marijuana.  (*Ibid*; *People v. Castro* (2022) 86 Cal.App.5th 314, 320–321 [smell of marijuana in a parked car with expired registration tags justified a search that uncovered a loaded gun because the car's occupants were minors, who are not allowed to possess any amount of marijuana].)

## C.  Discovery of a Partially Concealed Firearm Justified a Search

When Tamon Bell began to fight with Friedman's partner, Friedman ran to help, on the passenger side of the car.  Bell fled, pursued by the deputy.  Friedman looked into the passenger area and saw a gun handle in plain view.  The trial court found that the weapon furnished probable cause to search the entire vehicle.  The court was correct.

It is illegal to possess a concealed gun in a vehicle. (§ 25400, subd. (a)(1).)  Once Friedman saw a gun on the floorboard, he could search Smith's vehicle because there was an objective basis for suspecting criminal activity.  (*Ornelas v. United States, supra,* 517 U.S. at p. 696.)  Though the initial stop was for infractions, when Friedman saw evidence of an arrestable offense he could conduct a search of compartments within the vehicle, even if the contents are not in plain view.  (*People v. McGee, supra,* 53 Cal.App.5th at pp. 801, 805; *United States v. Ross*, *supra*, 456 U.S. at p. 800.)

In the course of a search based on probable cause to believe a crime was committed, Friedman would have inevitably found Smith's license, laser gun attachment, and ammunition, in

addition to the gun.  Thus, even if Friedman's initial examination of the driver's door was unwarranted, any evidence he saw there need not be suppressed.  (*Nix v. Williams* (1984) 467 U.S. 431, 441–444 [inevitable discovery rule].)  The trial court did not err by denying Smith's motion to suppress:  The search and seizure meet the rule of reasonableness.  (*United States v. Knights* (2001) 534 U.S. 112, 118–119; *People v. Fayed* (2020) 9 Cal.5th 147, 182.)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

LUI, P. J.

We concur:

ASHMANN-GERST, J.

HOFFSTADT, J.

9