Filed 4/9/26  P. v. Guidry CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E084970 |
| v. | (Super.Ct.No. RIF2300861) |
| ORILLION VON GUIDRY, JR., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Scott P. Williams, Judge. Affirmed with directions.

Dan E. Chambers, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Donald W. Ostertag and Robin Urbanski, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

Defendant and appellant Orillian Von Guidry was charged by felony complaint with possession of a firearm by a convicted felon (Pen. Code[1], § 29800, subd. (a)(1), count 1) and possession of ammunition by a felon (§ 30305, subd. (a)(1), count 2). He moved to suppress the prosecution's evidence against him pursuant to section 1538.5. The trial court denied the motion. The People filed an information, charging him with counts 1 and 2, as previously charged in the complaint, and defendant filed a motion to dismiss the information, pursuant to section 995. The court denied the motion. Defendant then filed a renewed motion to suppress under section 1538.5, subdivision (i), which the court also denied. He subsequently entered a plea agreement and pled guilty to counts 1 and 2, and the court granted him probation for a period of 24 months, on specified terms and conditions. The court struck all applicable fines and fees.

On appeal, defendant contends the trial court erred in denying his motion to suppress. He also argues the abstract of judgment must be corrected to strike the imposition of fines and fees. The People concede, and we agree, that the minute order should be corrected to reflect the striking of the applicable fees and fines. In all other respects, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The following factual background is derived from the combined preliminary hearing/motion to suppress hearing: Officer Galindo testified that he and his partner,

---

[1] All further statutory references will be to the Penal Code unless otherwise indicated.

Officer Gooselaw, were on patrol when they observed a black sedan at a gas station with no front license plate and dark tinted front windows, both of which constituted violations of the Vehicle Code. The car exited the gas station parking lot and got on the freeway. The officers followed it onto the freeway, and shortly thereafter conducted a traffic stop. The driver of the car pulled over onto the shoulder of the freeway. There was fairly heavy traffic at the time. Officer Galindo approached the passenger's side of the car, and the driver, defendant, rolled down the passenger side window to talk to him. Defendant was the only occupant.

Almost immediately, Officer Galindo observed brown papers, which he believed to be "blunt wraps," as well as a "fresh marijuana blunt," in the cupholder of the center console. The blunt was not actively lit, and, at the time of the hearing, Officer Galindo could not recall if the end of it appeared to have been burned. He also could not recall if the car smelled like marijuana. Officer Galindo informed defendant why he had been pulled over and asked for his identification and paperwork for the car. Because they were on the freeway with heavy traffic, Officer Galindo did not feel his partner would be safe standing on the driver's side of the vehicle. Also, because of the marijuana blunt he saw in the cupholder, which he testified was a violation of Vehicle Code section 23222, subdivision (b), he asked defendant to step out of the car. Officer Gooselaw escorted appellant to stand near the front passenger side of the patrol car.

Officer Galindo began searching defendant's car. He wanted to retrieve the blunt and search the car for other open containers of marijuana. As the officer was searching the front of the car, he observed what he thought was a gun wedged between the driver's

3

seat and the center console. He returned to the patrol car and placed defendant in handcuffs; then he went back to retrieve the firearm, which was a nine-millimeter semi-automatic handgun. There were nine rounds in the magazine, but none were chambered. Officer Galindo also retrieved the blunt and examined it more closely. He testified that "you could smell the odor of fresh marijuana coming from it," and, based on his training and experience, he determined it contained fresh marijuana. Officer Galindo stated that less than five minutes transpired between the time he first contacted defendant and the time he found the firearm.

The People introduced the video from Officer Galindo's body camera, as well as a transcript of the video, into evidence. The video showed that Officer Galindo approached defendant in his car, asked for defendant's license and registration, and informed him that he had no license plate and darkly tinted windows. Officer Galindo asked defendant if he was on parole or probation and informed him that he was being detained because of "[t]he marijuana right there." Appellant argued with Officer Galindo that he had not even smoked the marijuana, and Officer Galindo explained that the blunt was an open container. Officer Galindo then asked whether there were weapons or anything else in the car the officers should be aware of. Defendant continued to argue, stating that "[i]t's just a little bit of bud." He then denied having more drugs or any weapons in the car. The officer explained that because defendant had an open container, he was going to search the car. Defendant argued that it was not an open container and said, "I didn't even smoke it." Officer Galindo explained that it was an open container and asked whether there was anything he needed to know about in the car.

4

At the conclusion of the presentation of evidence, the prosecutor argued that the officers conducted a lawful traffic stop, during which Officer Galindo observed the marijuana blunt. He asserted that Officer Galindo had probable cause to believe defendant was in violation of the Vehicle Code and therefore had probable cause to search defendant's car for additional open containers of marijuana. When he searched the car, Officer Galindo observed the firearm, and he had the lawful authority to seize it. Defense counsel argued that the stop was prolonged. She also contended that one blunt was not enough to give the officer probable cause to search the car. Defense counsel also claimed the search was pretextual, and the officers were clearly searching for weapons.

After hearing closing arguments, the court denied defendant's motion to suppress. It found the officers had a reasonable suspicion to pull defendant over due to the vehicle code violations (missing front license plate and dark, tinted, front windows). The court stated that the officer saw what he believed was a marijuana blunt, and the court found that the blunt was an open container. Further, it found that Officer Galindo was entitled to ask defendant to step out of the car upon a lawful traffic stop, since there was an officer safety issue. The court explained that it observed the video and noted "there was not a lot of room on the side of the road," so it was lawful for the officers to have him step out of the car. The court then found that because of the presence of the blunt, Officer Galindo had the right to search the car for other marijuana, and while doing so, saw the firearm in plain view.

The People filed an information charging defendant with possession of a firearm by a convicted felon (§ 29800, subd. (a)(1), count 1) and possession of ammunition by a felon (§ 30305, subd. (a)(1), count 2).

Defendant filed a motion to set aside the information, pursuant to section 995, on the ground that the evidence produced at the preliminary hearing was insufficient to support the information. He argued that the traffic stop was unduly prolonged when the officer searched the car, and he added that although the officer said he was searching for marijuana, he was clearly searching for guns. Defendant also contended that the search was unlawful since he did not consent to it, and because the marijuana blunt did not constitute an open container that justified a search. Defendant argued that the evidence seized as a result of the officer's unlawful conduct had to therefore be suppressed.

The People filed an opposition and argued that defendant had already received a fully litigated suppression hearing and was barred from relitigating the same issues. The People also contended the findings of the trial court were supported by substantial evidence, and the denial of the suppression motion must be upheld.

The court held a hearing on the motion to set aside the information on August 29, 2024. The court stated that it had reviewed the moving and opposing papers, the preliminary hearing transcript, and the video. The court agreed with the prior court's reasoning and decision, and it denied the motion.

On September 30, 2024, defendant filed a renewed motion to suppress pursuant to section 1538.5, subdivision (i), again arguing that the police officer's actions did not justify the warrantless search. He again claimed the stop was unduly prolonged, the

6

officer was searching for guns (despite the prosecution's assertion that he was searching for more marijuana), he did not consent to the search, and the blunt observed by the officer did not justify the search. Defendant did not offer any new evidence.

The court held a hearing on the renewed motion to suppress on October 11, 2024. The court informed the parties that it read the briefs and preliminary hearing transcript and watched the video. The court adopted the trial court's factual findings. The prosecutor coined the motion as defendant's "third bite at the apple" and noted that this court was the third court to hear the same arguments. He also pointed out that there had been no new evidence presented, no new case law presented, and no change in the applicable law since the preliminary hearing. The court found there was reasonable suspicion to stop defendant's car based on the Vehicle Code violations. The court further found there was probable cause to search the vehicle based upon the officer's observation of what appeared to be an open container of marijuana in the center console. Defendant confirmed that what the officer saw was in fact marijuana. Upon searching the car, the officer saw the gun in plain sight. Therefore, the court denied the renewed motion to suppress.

On October 17, 2024, defendant entered a plea agreement and pled guilty to counts 1 and 2. In exchange, the court placed him on probation for a period of 24 months under specified conditions.

DISCUSSION

## I.  The Court Properly Denied Defendant's Motion to Suppress

Defendant argues the court erred in denying his motion to suppress.  He contends the traffic stop was unduly prolonged, the officers lacked probable cause to search his car, and the discovery of the loaded firearm in his car was the result of an unlawful detention.  We disagree and conclude the court properly denied the suppression motion.

### A.  *Relevant Law*

"The Fourth Amendment of the United States Constitution protects against unreasonable searches and seizures.  To that end, an officer generally must secure a warrant before conducting a search of private property."  (*In re Randy C.* (2024) 101 Cal.App.5th 933, 937 (*Randy C.*).)  "Warrantless searches 'are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'"  (*People v. Lopez* (2019) 8 Cal.5th 353, 359.)

"'One such exception to the warrant requirement is the automobile exception, under which an officer may search a vehicle without a warrant so long as the officer has probable cause to believe the vehicle contains contraband or evidence of a crime.  [Citation.]  "Probable cause is a more demanding standard than mere reasonable suspicion."  [Citation.]  Probable cause exists when "the known facts and circumstances are sufficient to warrant a [person] of reasonable prudence in the belief that contraband or evidence of a crime will be found."'"  (*Randy C.*, *supra*, 101 Cal.App.5th at p. 937.)

"On appeal from the denial of a motion to suppress (§ 1538.5), our standard of review is well settled.  We defer to the trial court's express or implied factual findings if

8

supported by substantial evidence, but independently apply constitutional principles to the trial court's factual findings in determining the legality of the search [Citation.] Our review, which is governed by federal constitutional standards (Cal. Const., art. I, § 28), 'is confined to the correctness or incorrectness of the trial court's ruling, not the reasons for its ruling.'" (*People v. Session* (2023) 93 Cal.App.5th 723, 730-731.)

B. *The Police Had Probable Cause to Search Defendant's Car*

Defendant does not dispute that the officers conducted a lawful traffic stop or that Officer Galindo observed a marijuana blunt in plain view. Rather, he argues that Officer Galindo had no probable cause to search his car, since the marijuana blunt observed in the cupholder was not an open container under the relevant statutes. Defendant points out that Officer Galindo did not detect an odor of marijuana emanating from the car and there was no evidence the blunt was lit. We conclude the blunt was an open container, and Officer Galindo had probable cause to search defendant's car for more open containers of marijuana.

At the outset, we note "the law is settled that the lawful possession of marijuana in a vehicle does not provide probable cause to search the vehicle." (*Randy C.*, *supra*, 101 Cal.App.5th at p. 939.) However, the question raised here is whether the *unlawful* possession of marijuana provided probable cause to search defendant's car.

Health and Safety Code section 11362.3, subdivision (a)(4) provides that no one is permitted to "[p]ossess an open container or open package of cannabis or cannabis products while driving, operating, or riding in the passenger seat or compartment of a motor vehicle, boat, vessel, aircraft, or other vehicle used for transportation." In addition,

9

Vehicle Code section 23222 provides, in relevant part, "a person who has in their possession on their person, while driving a motor vehicle upon a highway . . . , a receptacle containing cannabis or cannabis products, . . . which has been opened or has a seal broken, or loose cannabis flower not in a container, is guilty of an infraction."

In *Randy C.*, *supra*, 101 Cal.App.5th 933, a police officer conducted a traffic stop on a car with tinted windows that appeared to be in violation of the Vehicle Code. The officer contacted the driver of the car and observed a marijuana blunt on the lap of the passenger. The driver denied smoking the blunt, and the officer acknowledged that it was not burned or smoked. (*Randy C.*, *supra*, 101 Cal.App.5th at p. 938.) The officer conducted a patdown search of the driver outside of the vehicle and found no identification or contraband. He then searched the front passenger compartment and found an handgun in the glove compartment, an airsoft rifle behind the driver's seat, and another firearm in the trunk. (*Id*. at pp. 938-939.) The court found that the officer had probable cause to search the car based on the marijuana smell emanating from the car "and his observation of an 'open-ended blunt' in the passenger's lap that appeared to be a usable amount in an open container in violation of Health and Safety Code section 11362.3, subdivision (a)(4)." (*Id*. at p. 939.)

On appeal, the minor challenged the court's finding that the marijuana blunt was an "open container" within the meaning of Health and Safety Code section 11362.3, subdivision (a)(4), which provided probable cause for the officer to search the car's passenger compartment. (*Randy C., supra,* 101 Cal.App.5th at p. 939.) The minor argued that "a marijuana blunt, wrapped in paper but for a 'speck of marijuana'" on the

flattened end, was not an 'open container' of marijuana." (*Id*. at 940.) The court rejected his argument and found that the officer had probable cause to search the car. (*Id*. at pp. 940-941.)

"Section 11362.3 does not define the phrase 'open container or open package.' In the absence of a specifically defined meaning, we look to the plain meaning of a word or phrase as understood by the ordinary person, which would typically be a dictionary definition." (*People v. Johnson* (2020) 50 Cal.App.5th 620, 632-633 (*Johnson*).) As explained in *Randy C.*, "[t]he plain and commonsense meaning of an 'open container' is one in which there is no barrier to accessing the marijuana contained inside." (*Randy C.*, *supra*, 101 Cal.App.5th at p. 941.) "[P]aper wrapping holds the marijuana so that it can be smoked, thereby facilitating its consumption." (*Ibid*.)

In the instant case, Officer Galindo testified that he observed what he believed to be a marijuana blunt (or joint), based on its shape and size, in the center console cupholder of defendant's car. The officer had "years of experience dealing within the field what marijuana looks like, marijuana joints, marijuana blunts, how it is commonly packaged." He described the blunt in defendant's car as a brown colored, cylindrical shape, "like the shape of a cigarette or very similar." The cigarette-like wrapping holding the marijuana presented no barrier to accessing the marijuana. (*Randy C., supra,* 101 Cal.App.5th at p. 941.) Notably, defendant confirmed the blunt contained marijuana, and he denied smoking it. Thus, the evidence supports the court's finding that the blunt was an open container, under the definition of an open container in *Randy C.* (*Ibid*.)

Having established that the blunt constituted an open container of marijuana, we conclude there was probable cause to search defendant's car under the automobile exception. "[A]n open container within plain view provides probable cause to believe that other open containers may be found in the vehicle." (*People v. Souza* (1993) 15 Cal.App.4th 1646, 1653. Thus, the presence of the marijuana blunt provided probable cause to believe there were other open containers in defendant's car.

Defendant acknowledges the holding in *Randy C.* that the marijuana blunt constituted an open container, but argues that the reasoning in that case is flawed since it relied upon *People v. Castro* (2022) 86 Cal.App.5th 314 (*Castro*) and *People v. McGee* (2020) 53 Cal.App.5th 796 (*McGee*), which are factually distinguishable. Defendant points out that *Castro* involved minors in possession of marijuana, which he asserts is "factually distinct from [his] case and constitutes a separate violation of marijuana possession laws." He points out that *McGee* involved the search of a passenger's purse after the officer observed her in possession of an unsealed bag of marijuana. The distinctions defendant point to are immaterial to the instant case, since there was no dispute regarding what constituted an open container in those cases. (See *McGee*, *supra*, 53 Cal.App.5th at pp. 803-805 and *Castro*, *supra*, 86 Cal.App.5th at pp. 320-321.)[2]

---

[2] Defendant filed a letter on January 30, 2026, bringing our attention to the newly published case of *Sellers v. Superior Court* (2026) 19 Cal.5th 75 (*Sellers*). However, he merely states that this case is "relevant" to "pages 16 through 19" of his opening brief. "An appellate court is not required to examine undeveloped claims, nor to make arguments for parties." (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106.) We do, however, note that *Sellers* is distinguishable from the instant case, since it involved a "small amount of loose, crumbled marijuana on the car's floorboards" which

*[footnote continued on next page]*

We conclude, like the three courts before us who reviewed this case, that the blunt was an open container, and the officer had probable cause to search defendant's car.

## C. *The Detention Was Not Unlawfully Prolonged*

As to defendant's claim that the detention was unduly prolonged, we see no unlawful delay.  Defendant argues that the stop was prolonged since Officer Galindo "undertook unrelated inquiries" by asking him several times if he had anything else illegal in the car and at least three times if he had any weapons, and by asking him to exit the vehicle.

Defendant relies upon *Rodriguez v. United States* (2015) 575 U.S. 348 (*Rodriguez*), but that case does not aid him.  *Rodriguez* states that "the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop, [*Citation*], and attend to related safety concerns [*Citation*]." (*Id*. at p. 354.)  The Supreme Court explained that "[b]eyond determining whether to issue a traffic ticket, an officer's mission includes 'ordinary inquiries incident to [the traffic] stop.' [*Citation*.]  Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." (*Id*. at p.

---

the Supreme Court stated was not a violation of section 11362.3, subdivision (a)(4). (*Sellers*, *supra,* 19 Cal.5th 75 at p. 88.)  In doing so, the Supreme Court stated it "reject[ed] the assumption of some Court of Appeal opinions . . . that section 11362.3, subdivision (a)(4) requires any marijuana in a vehicle to be in a 'sealed' container in order to be lawful" and referred to *McGee*, *supra*, 53 Cal.App.5th at p. 804.  (*Sellers*, *supra*, 19 Cal.5th at p. 87.)

355.) We note that "[o]nce a vehicle has been detained in a valid traffic stop, police officers may order the driver and passengers out of the car pending completion of the stop without violating the Fourth Amendment." (*People v. Lomax* (2010) 49 Cal.4th 530, 564, italics omitted (*Lomax*).)

Here, Officer Galindo asked defendant for his license, registration, and proof of insurance, and he immediately observed the marijuana blunt. He informed defendant that he had an open container of marijuana and that he was going to be asked to step out of the car. As the People point out, once Officer Galindo observed the marijuana blunt, the officer's "mission" changed from issuing a citation, since he had probable cause to expand his investigation and search the car. (See § I. B., *ante*.) Moreover, it was permissible for the officer to ask if defendant had any weapons or anything illegal, for officer safety purposes, and to order defendant out of the car. (*Rodriguez*, *supra*, 575 U.S. at p. 354; *Lomax, supra,* 49 Cal.4th at p. 564.) Officer Galindo did ask appellant questions a few times, as defendant asserts; however, the record shows defendant did not answer the questions the first time; thus, it was reasonable for the officer to repeat them. Notably, Officer Galindo testified that less than five minutes transpired between the time he first contacted defendant and the time he found the firearm. In other words, it took less than five minutes to ask defendant questions, escort him out of the car, and find the gun. Under these circumstances, we cannot say that the traffic stop was unduly prolonged.

Defendant relies upon *People v. Gyorgy* (2023) 93 Cal.App.5th 659 (*Gyorgy*), *People v. Ayon* (2022) 80 Cal.App.5th 926 (*Ayon*) and *People v. Suggs* (2023) 93

14

Cal.App.5th 1360 (*Suggs*), in support of his position, but these cases are easily distinguishable.

In *Gyorgy*, the court said "[the officer's] mission for issuing a ticket or warning for the suspected traffic violation included the tasks of determining whether Gyorgy had a valid driver's license, checking his vehicle registration and proof of insurance, ascertaining whether he had outstanding warrants, and potentially even running a criminal history check, before writing the citation or issuing the warning. [Citations.] From our record, it appears [the officer] performed none of these tasks . . . It was more than five minutes into the detention before [the officer] explained to Gyorgy the basis for the traffic stop—an unsafe lane change. The record does not show [the officer] did anything else to address the traffic violation." (*Gyorgy, supra,* 93 Cal.App.5th at p. 672.)

Further, in *Gyorgy*, the officer "inquired into matters unrelated to the suspected traffic violation, asking Gyorgy about his probation and parole status, his criminal background, the contents of his truck, and whether he was a narcotics or sex offender registrant. Upon learning Gyorgy was a registered sex offender, [the officer] questioned him about where he was registered and whether he was current with his registration requirements." (*Gyorgy, supra,* 93 Cal.App.5th at p. 672.) The court noted that "[the officer] was permitted to detour from the traffic stop's mission and question Gyorgy about unrelated matters only so long as the questioning did not measurably prolong the stop beyond the time required to cite him." (*Ibid*.) However, in that case, the court concluded that the officer clearly exceeded that limitation.

15

Moreover, the court in *Gyorgy* noted that, after asking many questions unrelated to the reasons for the stop, the officer conducted a patdown search on Gyorgy and then used a police dog to sniff the truck's exterior. At that point, "[the officer] was about seven and one-half minutes into the traffic stop. The dog sniff and the 'safety precautions' [the officer] took to facilitate it were further detours from the traffic stop's mission." (*Gyorgy, supra,* 93 Cal.App.5th at p. 672.) The court concluded that "[the officer's] detours prolonged the traffic stop's duration beyond the time necessary to effectuate the stop's purpose. Therefore, the stop was unreasonable under the Fourth Amendment." (*Id*. at pp. 672-673.)

In *Gyorgy*, the court found the traffic stop was unlawfully prolonged, noting, in part, that the stop was 11 minutes and 54 seconds. (*Gyorgy, supra,* 93 Cal.App.5th at p. 673.) Similarly, in *Ayon*, the record showed that more than 18 minutes elapsed from the start of the stop to the time the police established probable cause to search the vehicle. (*Ayon*, s*upra*, 80 Cal.App.5th at p. 939.) By comparison, the stop in the instant case was under five minutes.

Further, defendant's reliance on *Suggs* is misplaced. In that case, a police officer stopped a car because it only displayed paper license plates. However, when he approached the car to talk to the driver, he saw temporary registration documents attached to the rear window, which satisfied the legal requirement for cars with paper license plates. (*Suggs*, *supra*, 93 Cal.App.5th at p. 1362.) Nonetheless, the officer prolonged the stop by asking the driver numerous questions unrelated to the purpose of the stop. (*Id*. at pp. 1362-1363.) The court concluded that the detention was unlawfully

16

prolonged since the officer saw the temporary registration documents and the reason for the stop dissipated, and he "conduct[ed] inquiries aimed at finding evidence of criminal wrongdoing separate and apart from the perceived violation." (*Id*. at p. 1365.)

Here, by contrast, Officer Galindo had valid reasons to stop defendant's car, and as soon as he started talking to defendant, he observed an open container, which gave him probable cause to search the car. (See § I. B. *ante*.)

Ultimately, we conclude the court correctly found that, due to the presence of the blunt, Officer Galindo had probable cause to search the car for other marijuana, and while doing so, saw the firearm in plain view. Therefore, the court properly denied defendant's motion to suppress the evidence.

## II. The Minute Order Should Be Corrected

After defendant entered the plea agreement and the court placed him on probation, it ordered the applicable fines and fees stricken. Defendant observes that the minute order from the plea hearing incorrectly reflects that the court imposed various fines and fees. Respondent agrees with defendant that the minute order should be corrected to show the fines and fees were stricken.[3] This appears to be a clerical error, which we will direct the superior court clerk to correct. (See *People v. Schultz* (1965) 238 Cal.App.2d 804, 80; *In re Candelario* (1970) 3 Cal.3d 702, 705.)

---

[3] Defendant asserts the abstract of judgment must also be similarly corrected; however, the record contains no abstract of judgment, presumably because the court placed him on probation.

DISPOSITION

The superior court clerk is directed to generate a new minute order reflecting that the October 17, 2024, minute order incorrectly states the court ordered defendant to pay various fines and fees, and that the court actually struck all applicable fines and fees. The clerk is further directed to forward a copy of the new minute order to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS          
            J.

We concur:

RAMIREZ          
        P. J.
McKINSTER          
        J.

18